JUDGE DUVALL
delivered the opinion oe the court:
This was an indictment against Darwin Payne, charging him with the murder of John White. By the verdict of the jury, he was found guilty of manslaughter, and a motion for a new trial having been overruled, the court rendered judgment by which the prisoner was sentenced, in conformity with the verdict, to be confined in the penitentiary for a period of six years.
Payne has prosecuted this appeal, and seeks ai’eversal of the judgment of conviction upon two grounds
*374 1. An error of tbe circuit court in rejecting important evidence ; and
2. An error in instructing the jury.
The questions involved in the second ground relied upon will be first considered.
The following are the instructions given by the court against the objections of the prisoner.
“ 1. If the jury find, from the evidence, that Payne killed White, as charged in the indictment, and the testimony for the prosecution does not show any circumstance of excuse or justification, the law presumes it was done maliciously, and they must find him guilty of murder, unless such excuse or justification is clearly made out by the defendant, and that no previous threats of the deceased against the defendant, however numerous or persistently made, furnish, of themselves, any such excuse or justification.
“2. That in order to excuse or justify the killing of White by Payne, he must have believed, and had reasonable grounds •to believe, that White was then about to kill him, or inflict on him great bodily harm, and that he had no other apparent ■means, by retreat or otherwise, to protect himself from such impending danger.
“8. If the jury believe, from the evidence, that Payne killed White upon legal provocation, and without malice, and in sudden heat and passion, and not in self-defense, they must find him guilty of manslaughter. * * * * * *
“ 4. That if the jury have a reasonable doubt that White was killed, as charged in the indictment, or that Payne killed him, they will find him not guilty.”
. It is insisted by the counsel for the appellant that the effect of the 4th instruction, taken in connection with the first clause of the first, was to restrict the application of the reasonable doubt to the corpus delicti, and the identity of the prisoner, and to deny to the defendant the benefit of any reasonable doubt which the jury might have entertained in relation to the proof of other facts necessary to constitute his guilt. This, we think, is the clear import of the language of the two instructions, and they were doubtless so understood, and so intended to be under *375 stood, by the jury, although the words “ as charged in the indictment” might seem to modify or qualify the meaning, to some extent.
The question then arises, do the instructions, as thus interpreted, embody a correct exposition of the law applicablé to the point to which they relate ?
That every man is presumed to be innocent until the contrary be proved, and if there be reasonable doubt as to his guilt, the jury are to give him the benefit of such doubt, is a principle of almost universal recognition in the criminal jurisprudence of England and of this country. In the application of the principle, however, there seems to have existed some diversity of opinion, according to the adjudged cases. In Ohio, for instance, it was decided, in the case of the State vs. Turner, (Wright, 29,) “ that where, as in cases of homicide, the legislature had created degrees of guilt, the doctrine of doubts did not apply to any but the higher grades; that it was a rule of law adopted in favor of life, and is therefore only applicable to the charge of murder in the first degree, and does not apply to either of the other offenses embraced in the indictment.” Wharton, ini his work on American Criminal Law, in commenting upon this case, says: “ It cannot be doubted, however, that in making such a distinction, the learned judge was in error. Doubts as to a defendant’s guilt are to weigh in his favor, because the law presumes him innocent until he is shown to be guilty; and if such a presumption exists at all, it exists in every case alike.” {Page 330.) And it is elsewhere said by the same author, that “ the principle may be broadly stated, that when the defendant relies on no separate, distinct, and independent fact, but confines his defense to the original transaction on which the charge is founded, with its accompanying circumstances, the burden of proof continues throughout with the prosecution. (Crim. Law, section 707. See, also, Commonwealth vs. McKee, 1 Gray, 61; Coffee vs. State, 3 Yerger, 283.) ^
The same distinction was expressly recognized by this court in the case of Graham vs. Commonwealth, (16 B. Mon., 587,) in which the defense relied upon was insanity. The court held that the presumption in favor of the innocence of the accused, *376 until the contrary was satisfactorily established, “ continues in force in behalf of the accused, and remains Ms shield and protection as long as a rational doubt exists as to his guilt.’* And that he is always entitled to this presumption where the facts relied on as a defense are a part of the transaction, or directly connected with it. But that where the defendant relies on a separate and independent fact, not connected with the transaction on which the charge is founded, such as insanity, the defendant must then assume the burden of proof, and the law demands of him such evidence in support of that defense as will satisfy the jury, beyond a reasonable doubt, that he was insane when he committed the homicide; the reason of the rule being that every man is presumed to be sane until the contrary is shown, a presumption as necessary and universal in criminal cases as the presumption of innocence.
A more extended or elaborate review of the authorities upon this subject is deemed wholly unnecessary.
The rule which entitles the defendant to the benefit of a reasonable doubt as to any of the material facts necessary to make out his guilt of the offense, or of any grade or degree of the offense charged in the indictment, has been recognized in the most unequivocal form by the legislature of this state.
By the Criminal Code, (sections 236 and 237,) it is provided that “ where there is a reasonable doubt of the defendant being proven to be guilty, he is entitled to an acquittal; and where there is a reasonable doubt of the degree of the offense which the defendant has committed, he shall only be convicted of the lower degree.” This language is so explicit and clear, that nothing is left for construction. No illustration can make it plainer. It applies the reasonable doubt to all the material facts of the transaction on which the charge is founded, and which legitimately bear upon the question of the guilt or innocence of the accused. If, upon the whole case, the jury entertain a reasonable doubt of the defendant being proved to be guilty of the offense charged, or of any offense embraced by the charge, he is entitled to an acquittal. And if, upon the whole case, there is a reasonable doubt of the degree of the offense which has been committed, the defendant is in like manner *377 entitled to the benefit of that doubt, and can only be convicted of the lower degree. Whether the doubt arises upon, or is created by the proof of the facts which tend to establish his guilt, or of those which tend to sustain his defense, is wholly immaterial, as, in either case, he is entitled to the benefit of it, by the terms of the statute. Any construction which would limit the benefit of the doubt to the two facts — 1st, that the deceased was killed; and 2d, that the defendant killed him, would virtually repeal the 237th section, or at least divest it, in most cases, of all beneficial operation. The Commonwealth proves that the deceased was killed, with a deadly weapon, by the defendant, and there rests the case. Upon these facts, nothing else appearing, the law presumes that the killing was malicious, and that the defendant is guilty of murder. But he introduces evidence conducing to prove facts and circumstances of excuse or mitigation, sufficient to create a doubt in the minds of the jury whether the killing was done maliciously or in sudden heat and passion. According to the Code, the effect of the doubt would be to reduce the offense, and the finding of the jury, from murder to manslaughter. But according to the doctrine propounded in the instructions under consideration, such doubt could have no effect or operation upon the case or the result.
From what has been said, it follows that the two instructions were erroneous and prejudicial to the rights of the appellant.
The second instruction is unobjectionable, according to our interpretation of its phraseology. To justify the killing, it was certainly necessary that Payne should have believed, and had reasonable grounds to believe, that White was then about to kill him or inflict on him great bodily harm, and that he had no other apparent means of protection or escape.
The third instruction leaves the jury to determine for themselves what constitutes legal provocation, and in that respect is clearly erroneous.
It becomes necessary to notice, in the next place, an objection which has been urged as to the manner in which the instructions were given to the jury. It appears from the bill of exceptions certified by the judge, that the four instructions *378 'we have been considering were reduced to writing and read to the jury by the judge, who accompanied them by a brief verbal explanation; that the jury were then placed in charge of the sheriff, and were informed that if they made a verdict before bed-time, it would be received; that on the next morning a paper, containing the substance of the verbal explanation of the second instruction, was handed to the jury, who were told by the judge to regard nothing as law in the case but that which was furnished them in writing. An effort is made to show, by the record, that the verbal explanations here referred to were neither correctly nor fully set forth in the paper handed to the jury as stated; but whether this effort is to be regarded as successful or not, need not be determined.
By section 226 of the Criminal Code, it is provided that “ the court shall (after the argument of counsel to the jury) instruct the jury on the law applicable to the case, which shall always be given in writing.’’’’ The wisdom and policy of this rule of criminal practice are so obvious, and the terms in which it is prescribed are so direct and imperative, that no departure from it should in any case be tolerated. It can hardly be necessary to suggest that the explanation of an instruction given to the jury is necessarily a part of die instruction, and that the meaning of a written instruction might be so modified by a verbal explanation, as to change or destroy the legal effect and force of the proposition of law set forth in the written instruction; and in this way all the objects intended to be secured by the wholesome statutory rule, which requires that all the law applicable to the case upon which the jury are to pass, shall always be given in writing, might be totally defeated.
It results that in this case the court erred in giving to the jury the verbal instructions complained of, and the error was not cured by what occurred on the day following, especially as the jury had been sent to their room the evening before, for the purpose of deliberating upon the case and agreeing upon a verdict.
The other point relied upon by the appellant may be very briefly disposed of. The record contains two bills of exceptions, one of which is certified by the judge, the other by two *379 by-standers, and filed also as part of the record, according to section 367 of the Civil Code, which, by section 227 of the Criminal Code, regulates the mode of preparing and signing bills of exceptions in criminal cases. Numerous affidavits were procured by the appellant for the purpose of maintaining the truth of the exceptions certified by the two by-standers.
From the bill of exceptions certified by the judge, it appears that testimony was admitted on the trial which conduced to show that White was a man of violent, cruel, and blood-thirsty temper and disposition; that he was in the constant habit of carrying concealed deadly weapons, and was scarcely ever known to be out of his house without them. It is stated in the other bill of exceptions, however, that all the evidence to this effect was excluded by the court. There thus appears to be no difference of opinion between the court below and the counsel for the appellant as to the competency of this testimony, but the whole controversy is confined to the question of fact whether it was rejected or admitted upon the trial. This question it is wholly unnecessary that we should consider or determine, inasmuch as the judgment must be reversed upon other grounds.
We are of opinion that the testimony in question was admissible, in view of all the other proof as presented by this record. The general principle upon which the admissibility of such evidence depends, was recognized by this court in the cases of Rapp vs. Commonwealth, (14 B. Mon., 614,) of Meredith vs. Commonwealth, (18 B. Mon., 49,) and Cornelius vs. Commonwealth, (15 B. Mon., 546,) although the point was not in either of those cases directly presented. Numerous cases decided by the courts of other states furnish conclusive authority upon this subject, a reference to which is to be found in Wharton's American Law of Homicide, (p. 229,) where the doctrine is thoroughly and ably discussed. (See, also, Pritchett vs. State, 22 Alabama Rep., 39.)
Various other grounds for a new trial were relied upon in the circuit court, but they relate to matters over which this court has no jurisdiction, and in regard to which it would be improper to express any opinion.
*380 For the errors mentioned, the judgment of conviction is reversed, and the cause remanded for a new trial and further proceedings in conformity with this opinion.