# BELKNAP,

## JULY TERM, 1859.

### DUDLEY *v.* ELKINS.

An agreement between owners of adjoining lands, that the line between them shall be ascertained and settled by a surveyor, is, when executed, conclusive upon them and all claiming under them : and not, as in some jurisdictions, merely strong evidence of the line.

Possession up to a line, run by a surveyor in the presence and by direction of the parties, long continued, without question, is evidence from which a jury may infer an agreement of the parties, that the line so run should be conclusive.

WRIT OF ENTRY, to recover a piece of land in Gilmanton, part of lot No. 15, in the second range of hundred acre lots in the first division, being about fifty-nine rods long, and one rod and six feet wide at one end, and two rods six feet at the other.

Plea, *nul disseizin.*

The demandant showed title in himself to thirty-three acres of said lot, derived from John and Peter Dudley, and contended that the demanded premises were a part of said thirty-three acres. He became owner of the land conveyed to him in February, 1831. The tenant had title to a portion of lot No. 15, in the first range, situate directly opposite the demandant's land. His title was acquired April 24, 1856, and derived from the Pages, hereinafter named.

In the demandant's deed the course next to the tenant

was described as running "southwest on the range line";
and in the tenant's deed the course next to the demandant
was stated to be "south, forty-seven degrees west, binding
on the rangeway."

The lines, as the lots were originally laid out, run north-
east and southwest: the second range of lots lying north-
west of the first range. It was conceded on the trial that
the rangeway belonged to lot fifteen in the first range, and
the demandant did not claim any part of it.

In 1825 John and Peter Dudley owned in common lot
fifteen, in the second range, and Benjamin, Samuel and
Ebenezer Page owned in common lot fifteen in the first
range.

Prior to that time the respective lots had been owned by
the Page and Dudley families for many years, and it did
not appear that any dispute had ever arisen as to the line
between their lands.

In the year 1825 Benjamin Page complained to one of
the Dudleys that some person had been cutting on their
land, and not long after that notice was given by the Pages
to the Dudleys to run the line between them.

John and Peter Dudley, the owners of the lot in the
second range, were old and infirm men, and said they
could not go, but directed their two sons, who were of
age, to go and see to it, and attend to the running.

On the day set the Pages came with Parsons, a sur-
veyor, and met the Dudleys at the place notified. Parsons
commenced running the line on what he said was the
upper side of the range way, next to the second range of
lots, and run through from the corner started from on that
line, in a northeasterly direction, and came out near a pile
of stones, which was a corner of lot sixteen, and which
the parties to this suit admitted was a true corner on the
upper side of the range; leaving the range way as belong-
ing to the lot in the first range. When they came out
the Pages expressed themselves dissatisfied with the line.

The demandant's evidence then tended to show that a verbal agreement was at that time made between the Dudleys and Pages, that Parsons should run out the line again about a week thereafter, and that they would abide by his decision. One of the witnesses who was present at the time testified that he understood from the parties that the second running was to be the end of it, and that it was left to Parsons, and they would abide by his line.

The tenant's evidence tended to show that no agreement was made on that day, of any kind, but that, soon after, Benjamin Page went to see the Dudleys, and requested that Parsons might run the line again, and that the Dudleys, after some hesitation, agreed to a second running, and that the Pages and Dudleys afterwards met at the pile of stones at the time fixed.

Parsons then commenced running the line at that point, which was on the upper side of the range way, next to the second range of lots, and which was not in dispute, and run a line through in a southwesterly direction, in what was supposed to be on the upper side of the range way between lots fifteen in the two ranges; the parties cutting away the bushes and marking the trees, so as to make the line readily seen and well defined.

The defendant's evidence tended to show that about the time they came out, and before the marking was all finished and the line established, the Pages expressed themselves dissatisfied, and said they would not abide by the running; while the plaintiff's evidence tended to show that no dissatisfaction was expressed till after the running was completed, and the parties had separated; and that then, although the Pages were dissatisfied, they concluded among themselves to give it up, rather than have any further trouble about it.

After the line was thus run through and marked, the plaintiff's evidence tended to show that the owners upon both sides occupied up to the line without interruption,

Dudley *v.* Elkins.

and without complaint from either, cutting wood and timber as they had occasion, until the defendant purchased, in 1856, when he extended his fence over the line, and included in his enclosure the demanded premises, which are a strip of land directly above this line, and bounded on the lower side by it; while the defendant's evidence tended to show a cutting over the line on several occasions by some of the Pages, but not with the knowledge of the Dudleys. There was no evidence of any contract or agreement between the parties, after the close of the second running.

There was much evidence in the cause, and a good deal that was contradictory, particularly as to where the true range way lines were.

After the evidence was all in on both sides, the counsel for the defendant requested the court to instruct the jury as follows:

There is no competent evidence in the case, tending to prove such an agreement to abide by the Parsons line, before or at the time of the second running, as was binding on the parties.

If the jury find upon the whole evidence that at the time the parties separated, on the day of the second running, the line was not established by agreement, then there is no evidence in the case from which the jury may infer an agreed line.

Occupation by cutting trees cannot constitute an agreement by which the boundaries of land can be altered, but is only evidence from which the jury may find an agreement; and if the jury, notwithstanding the occupation, believe there was actually no agreement, then the agreed line fails.

If the occupation may constitute an agreement, this cannot be, unless the occupation is all one way, and not interrupted by any occupation on the other side.

If the jury should find that the Pages agreed at the first running to abide by the second running, still they were not bound by the second running, if they disagreed to it on the ground, and never afterwards made any agreement to abide by it.

If the jury should find that the line was agreed upon at the second running, it cannot avail the plaintiff in this case, because, whatever land the Dudleys took from the Pages by virtue of the alleged agreement, does not appear to have been conveyed to the plaintiff; that is, the land which the plaintiff took by his deed is in the second range, and is bounded on the southeast all the way by the range way. If John and Peter Dudley owned any land by virtue of the alleged agreement, the plaintiff cannot hold it except by express conveyance.

The court did not instruct the jury in those terms, but charged them, in substance, that there was evidence, competent to be considered by them, as tending to show an agreement for Parsons to run the line the second time, and for the parties to abide by it; and that if they found that the Pages, being the owners of lot number fifteen, in the first range, together with the range way, and the Dudleys, being owners of lot fifteen, in the second range, agreed that Parsons should run and establish the range line between them, which was admitted to be the line upon the upper side of the range way and the line between their lands, and Parsons went on and established it accordingly, and the agreement was not revoked by any one of the parties before the line was so run, marked, and established, the line thus fixed by the execution of the agreement would be binding upon the parties and their grantees: That the agreement, if any, being a verbal one, any one of the parties had the right to revoke it at any time before the line was run through, finished and established, but not afterwards.

Dudley v. Elkins.

Or, if they found that no such agreement was made, but the parties, though dissatisfied with the line, afterwards acquiesced in it, it would be binding: That an acquiescence might be either by positive agreement, or the parties might so conduct towards each other as to make their acts evidence from which the jury might find an agreement; that if the Pages cut up to the line repeatedly upon one side, as they had occasion, from 1825 to 1856, when the defendant purchased, and the Dudleys did the same upon the other side during the same time, with the full knowledge of each party, and knowing where the line was, and without complaint, and without trespassing in any way upon each other, this would be evidence from which the jury would be at liberty to find an agreement, but that such occupation, to be evidence, must be uninterrupted and undisputed:

That, there being no controversy about the title upon either side, and no dispute that the demanded premises are above the Parsons line, and bounded on the lower side by it, if they found that that line was established in either of the ways stated by the court, as the range line upon the upper side of the range, the demandant would be entitled to their verdict.

In the course of the trial, Nathaniel Dudley, a witness for the plaintiff, on cross-examination testified that after the second running, on that day, before the parties had separated, he told Benjamin Page that he should not run the lines any more; that one reason why he made the remark was, that Page had agreed to the running. The counsel for the defendant then proposed to have the witness state what he had heard from others in regard to Benjamin Page being dissatisfied, as another reason for his making the remark to Page; but the court ruled it inadmissible, and the defendant excepted.

Benjamin Page was a witness for the defendant, and testified that on the day of the first running, when the

parties came out at a pile of stones, he thought nothing was said about running again.

The counsel for the defendant then proposed to the witness this question: Did you make any agreement at that time? The question was objected to by the plaintiff's counsel, as being leading, and the court ruled it out upon that ground; to which ruling the defendant's counsel excepted.

The jury returned a verdict for the plaintiff, and the defendant moves to set the same aside, and for a new trial, for supposed error in the foregoing rulings and instructions of the court.

*Bellows,* and *E. A. Hibbard,* for the defendant.

*Stevens & Vaughan,* and *Whipple,* for the plaintiff.

BELL, J. An agreement fixing the dividing line between adjoining owners is binding, although the agreement is by parol. *Prescott* v. *Hawkins,* 12 N. H. 26, and cases there cited; *Enfield* v. *Day,* 7 N. H. 467; *Clough* v. *Bowman,* 15 N. H. 511; *Carlton* v. *Redington,* 21 N. H. 301.

A like agreement between owners of adjoining lands, that the line between them shall be ascertained and settled by a surveyor, is, when executed, conclusive upon them and all claiming under them. *Sawyer* v. *Fellows,* 6 N. H. 107, and cases there cited. Possession up to a line is evidence from which a jury may infer such an agreement. *Richardson,* Chief Justice, *Enfield* v. *Day,* 7 N. H. 468.

The charge of the court was in strict accordance with these decisions; that the parties might agree that a surveyor should run and establish the line, and if the surveyor, in pursuance of such agreement, and while it was unrevoked, did so run, mark and establish the line, the parties and their grantees would be bound by it; but at

Dudley *v.* Elkins.

any time before the line was actually run and established either party might revoke the agreement; that there was evidence in the case competent for them to consider, as tending to prove such an agreement and consequent establishment of the line, and if they found the facts to be so the line was binding on the parties.

If the line was run by a surveyor employed by both parties, without an agreement to be bound by his line, and the parties afterwards agreed to the line as run, they would be bound by it.

Though the parties at the time were dissatisfied with the line, yet, if they acquiesced in it, and each party, on his own side, cut, as he had occasion, up to the line and no further, from 1825 to 1856; and each knowing what was so done by the other, neither made any complaint, it would be evidence from which the jury, if they deemed it sufficient, might find an agreement to abide by the line; but such occupation, to be evidence, must be uninterrupted and undisputed.

This statement of the law, as substantially given in the charge, seems to us correct. As to the question of fact, whether there was competent evidence before the jury to prove an agreement and settlement of the line by the surveyor, or by the parties, the defendants requested the court to instruct the jury that there was no competent evidence to prove an agreement to abide by the line run by Parsons, either before or after it was run.

It seems to us, according to the case, there was no foundation for this request. It is there said the demandants' evidence tended to show that there was a verbal agreement between the Dudleys and the Pages that Parsons should run the line, and they would abide by his decision; while the defendants' evidence tended to show that no agreement of any kind was made that day. It is now contended that the sons of J. & P. Dudley, the owners, were not authorized to make such agreement. They

were only directed to go and see to it, and attend to the running. It was competent for the jury to consider the relations of the parties, the situation of the owners and of the property, the acts of the parties at the successive runnings, in connection with the long acquiescence of the parties interested since, if they regarded that as proved, in putting a construction upon the loose and uncertain directions, and to determine if the language used gave authority to agree upon the line. It could not with propriety be said there was no evidence of such authority.

As to the second instruction requested, it was not warranted by the facts stated, and we think the rule laid down to the jury on that point by the court was correct. Long acquiescence is evidence of an agreement to a line. *Rockwell* v. *Adams*, 6 Wend. 469; *Jackson* v. *Ogden*, 7 Johns. 245.

The third, fourth and fifth instructions were substantially given to the jury. The last, that if there was an agreed line it cannot avail the plaintiff, because he is limited by his deed to the true range line, was not called for upon the evidence. By the deeds it appeared that the land conveyed by J. & P. Dudley to Nathaniel Dudley and by him to the demandant, was bounded towards the southeast by the range line running southwest. In giving a construction to these deeds it is competent for the court to consider the condition of things at the time, as understood by the parties, so far as they are enabled by the evidence to do it ; and if it appeared that the location of the range line had been in doubt, and had been settled by agreement with the adjoining owners, the deed might be fairly construed to bound the land conveyed by the line thus settled, whether it included more or less than the original range line would embrace; since the term, range line, might apply to the original range line, or to the supposed range line, as established by the parties.

The case of *Robinson* v. *Miller*, 37 Me. 312, is relied on by the defendants, as establishing the principle that the plaintiff can derive no advantage from the agreed line, to which, as such, no reference is made in his deed; that to allow him to recover under the agreed line is to contradict or vary the plain and unambiguous stipulations of his deed, and to enlarge his grant in a manner unauthorized by law.

The counsel probably did not advert to the difference between the views of the courts of Maine and Massachusetts, and those of the courts here and in some other States, on this subject. In the first named States an agreement of parties to establish a line is not conclusive. It is merely strong evidence of the accuracy of the line thus established. *Whitney* v. *Holmes*, 15 Mass. 153; *Gove* v. *Richardson*, 4 Greenl. 327; 9 N. H. 477; *Sparhawk* v. *Bullard*, 1 Met. 95; *Clark* v. *Stone*, 1 Met. 378.

Here, if the parties agree on the range line which is their boundary, as between them, it is the range line conclusively, and when they speak of the range line they may well be understood as meaning that line. There, if the parties agree on a line as the range line, it is not, even as between them, the range line, but the agreement is merely evidence that the agreed line is the true range line, and when the party speaks of the range line he must be understood to refer to the true line.

The result from our decisions seems most reasonable and satisfactory, since it can hardly be supposed that the seller of land, using the same description by which he holds it, would not intend to convey to his line as settled, or that he would not intend to give to the buyer the advantage of his settlement as to a disputed line.

Hearsay evidence is generally inadmissible; and it cannot be asked, even on cross-examination, what others have said, though the apparent object is to ascertain a reason for the party's noticing and recollecting another fact. A

witness may be asked if anything that was said at the time enables him to recollect, but he cannot be asked what was said, if that would introduce testimony otherwise improper. The question to Nathaniel Dudley was, therefore, properly disallowed.

The question to Benjamin Page was evidently leading. It was easy to avoid the objection—Was any agreement made? by whom? at what time? or What, if any, agreement did you make, and when?

*Judgment on the verdict.*