LOUIS LESERMAN, as Sole Acting Executor, etc., Respondent *v.* ISAAC BERNHEIMER et al., Appellants.

Where under and by the terms of a copartnership agreement each partner contributes an equal portion of the capital and is to share equally in the profits and losses, after dissolution, an account taken and a settlement of debts and liabilities, a partner who has advanced moneys to the firm is entitled to be repaid the sum advanced out of the remaining assets before distribution is made.

In case a partner has overdrawn, his share of the residue will be diminished by the amount of the over-draft, and in case this exceeds the share coming to him, he is liable to the other partners for the excess.

In an action for an accounting between partners, it appeared that no time was fixed by the articles of copartnership for its continuance. An account of stock was taken and balance struck as of December 31, 1873, with the understanding between the partners that the partnership was to be dissolved and the business wound up; it was not, however, formally dissolved until March 13, 1874, when an agreement of dissolution was entered into between them, by which defendant B. was given and took charge of the assets, with authority to collect and dispose of the same and to pay the firm debts, and he alone was authorized to sign in liquidation. Prior to December 31, 1873, $3,000 had been paid out of the copartnership funds on account of defendant G., but had not been charged in account. This sum was on that day, without the knowledge or consent of plaintiff, charged to the account of G. and then was credited to that account and charged to profit and loss, thus leaving an apparent balance of capital due to G.; this he thereafter, but before the final dissolution, drew out. In the accounting the referee charged this sum to B. as the liquidating partner. *Held*, error; that until March 13, 1874, when the dissolution agreement was executed and B. took exclusive charge, he had no more authority or control than the other partners, and so could not be made responsible for the acts of G.

Also, *held*, that in adjusting the capital accounts between the parties it was proper to allow interest upon the balances standing to their credit down to March 13, 1874.

An action was commenced against the copartners in December, 1873, for an alleged infringement of a patent by the firm, and counsel were employed by it to defend. The action was continued until October, 1876, when it was compromised and release given by the plaintiff therein. B. paid the expenses and disbursements in the defense of the action after the dissolution. It appeared that after L. had concluded to withdraw from the business, B. G. and one S. decided to organize a corporation to continue it. On March 13, 1874, B., as liquidating partner, leased to S. the property and works of the firm with an option to purchase contained in the lease. This was with the knowledge and approval of L., but it did not appear that he knew of the intent to form a corporation or that his copartners were to be members. The corporation was organized and B. transferred to it the bulk of the stock of the firm, and S., in exercise of the option, purchased the leased property for the benefit of the corporation. These transactions were set up in the pleadings, upon the accounting the sums paid for these transfers were stated and the adjustment was made on the basis of the prices received, without objection on the part of plaintiff, who then had full knowledge of all the facts. The referee found that the said release and settlement of the suit pending was brought about in part by the agreement of B. and G. not to carry on the business and the transfer of the stock in trade of the corporation to another corporation for a sum paid to B. and G., and for this reason the referee refused to allow B. for such expenses and disbursements. *Held*, error; that while plaintiff, on learning the fact that his former copartners were benefited by and interested as purchasers in the sales, might have rejected the adjustment of accounts on the basis of the price received, and either have shared in the profits, if any made by them, or repudiating the sales, have held the liquidating partner liable for the value of the property; having, after full notice, concluded to treat the sales as valid, this was a ratification thereof, and defendants were not required to answer concerning the disposition of the property, and their failure to do so was no reason for disallowing the expenses; that all he was entitled to was to have disallowed any portion of the expenses which were made for the exclusive benefit of the new corporation.

B. also paid G. for services rendered by him in said suit after the dissolution. *Held*, that he was entitled to be allowed therefor.

(Argued January 21, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 24, 1887, which affirmed a judgment entered upon the report of a referee.

This action was commenced May 20, 1875, by Simon Leserman against Isaac Bernheimer and Jacob Goldsmith for the settlement of accounts growing out of partnership business theretofore carried on by plaintiff and defendants under the name of " Oleophene Oil Company."

During the pendency of the action the plaintiff died, and it was continued in the name of his executrix, Julia Leserman, and she dying it was revived and continued in the name of Louis Leserman, sole acting executor of Simon, the original plaintiff. Both defendants appeared, and the issues made by their answers were tried before a referee, upon whose report judgment was rendered in favor of the plaintiff against Bernheimer for $47,183.91, and in favor of the plaintiff against Goldsmith for $12,491.17, and in favor of Bernheimer against Goldsmith for $41,322.02.

Further facts appear in the opinion.

*William G. Choate* for appellants. While loans by copartners to the firm are not to be paid out of the assets till all creditors of the firm are fully discharged, yet when that has been done, such loans should next be liquidated out of any remaining assets before there is anything to divide. (*Frigeris* v. *Crottes,* 20 La. Ann. 351; *Legar* v. *Peacock,* 109 Ill. 102; *Nowell* v. *Nowell,* L. R., 7 Eq. Cas. 528; *Wood* v. *Scoles,* L. R., 1 Ch. App. 369, 377.) If a partner draws on his capital, then he, in theory of law, at once makes good that withdrawal by a repayment to the firm. Until such partner makes good that withdrawal by such repayment, capital account has a claim against that partner for the amount of that withdrawal, and capital account should be credited with that claim against that partner. (*Schultz* v. *Anderson,* 13 J. & S. 489.) It was error not to allow interest on the balances standing to the credit of the partners, Bernheimer and Leserman, in determining the amount which should be paid to Bernheimer out of the remaining assets, on account of his greater interest in the assets, in order to equalize their capital accounts before dividing between them any surplus. Interest should, at any rate, have been

allowed down to March 13, 1874, the date of dissolution. (*Johnson* v. *Hartshorn.* 53 N. Y. 177.)

*Robert S. Green* for respondent. If any partner has made advances to the firm and others have received advances from it, these do not constitute debts strictly operating until the concern is wound up, but are only items in the account between the partners. (Story on Partnership, 348 a; *Richardson* v. *Bk. of Eng.,* 4 M. & C. 165, 172; *Buckingham* v. *Ludlum,* 2 Stew. 345.) When an account is to be taken each partner is entitled to be allowed against the other everything he has advanced, or brought in as a partnership transaction, and to charge his copartner in that account what he has not brought in, and with what he has taken out beyond the proportion to which he was entitled; and nothing is to be considered as his share but his proportion of the residue in the balance of the account. (*West* v. *Skip,* 1 Ves. Sr. 242; *Price* v. *Jackson,* 6 Mass. 243; *Butler* v. *Bullard,* 11 J. & S. 191; *Neudecker* v. *Kohlberg,* 3 Daly, 407; *McCall* v. *Moschcowitz,* 10 Civ. Pro. Rep. [Browne] 107, 140; *Jones* v. *Butler,* 23 Hun, 371.) The rule as to the interest adopted by the referee was more favorable to the appellant than he was entitled to, and if there is any error, it is in appellant's favor. (*Johnson* v. *Hartshorne,* 52 N. Y. 173, 177; *Watney* v. *Wills,* L. R., Ch. App. 250; 1 McCord, 213; *Stoughton* v. *Lynch,* 2 Johns. Ch. 219; *Doughty* v. *Van Nostrand,* Hoff. Ch. 68; *Andrews* v. *Andrews,* 3 Bradf. 100; *Buckingham* v. *Ludlum,* 2 Stew. 351; *Washburn* v. *Goodman,* 17 Pick. 519; *Dexter* v. *Arnold,* 3 Mass. 284; *Burdised* v. *Loughborough,* L. R., 8 Ch. 1; *Honore* v. *Colmeswil,* 7 Dana, 199, 201.) No allowance for extra services is to be made without express stipulation between the partners. (*Franklin* v. *Robinson,* 1 Johns. Ch. 159, 165; *Bradford* v. *Kimberly,* 3 id. 431, 434; *Caldwell* v. *Leiber,* 7 Paige, 483; *Lyon* v. *Snyder,* 61 Barb. 172; *Johnson* v. *Hartshorne,* 52 N. Y. 173.) A liquidating partner has no other or greater power than he has as a partner; the only peculiarity is that the

others have agreed not to exercise their rights of acting. (Parsons on Part. 388; *Nat. Bk.* v. *Norton,* 1 Hill, 572.) The payment by Bernheimer of $86,000 to himself relieved the firm from paying interest thereon. (*Johnson* v. *Hartshorne,* 52 N. Y. 177; *Watney* v. *Wills,* L. R., 2 Ch. App. 250.)

DANFORTH, J. The capital of the firm was $225,000, to which each partner contributed $75,000, under an agreement that each partner should share the profits and bear the losses equally with the others, viz., one-third each. No time was fixed for its continuance, and November 25, 1873, Leserman elected to have the business wound up, and by notice to his partners required that an account should be taken for that purpose. This was done. An account of stock was taken and balance struck as of the thirty-first day of December of that year, at which time, the referee finds, ".it was distinctly known and understood by all the parties that the partnership was to be dissolved and wound up in pursuance of the notice already given by Leserman." It was not, however, formally dissolved until March 13, 1874, when the following agreement was executed by the several parties, viz. :

"Agreement made and entered into this 13th day of March, 1874, by and between Isaac Bernheimer, party of the first part, Jacob Goldsmith, party of the second part, and Simon Leserman, party of the third part, witnesseth :

"*First.* That it is hereby mutually agreed that the copartnership heretofore existing between all of the parties hereto under the name and style of the " Oleophene Oil Co." shall be and the same is hereby wholly dissolved.

"*Second.* That the said Isaac Bernheimer only shall have the power and the authority, and the same is hereby accorded and granted unto him, of taking charge of all the assets of the said copartnership, to collect and dispose of the same to the best advantage, to compromise and settle claims of the firm and to pay and meet all the obligations and debts of said copartnership out of the said assets, and is alone authorized to sign in liquidation.

"In witness whereof, the parties to these presents have hereto set their hands and affixed their seals the day and the year first above written.

"ISAAC BERNHEIMER. [L. s.]

"JACOB GOLDSMITH. [L. s.]

"SIMON LESERMAN. [L. s.]

"Sealed and delivered in the presence of

"WM. J. TRIMBLE."

It was found that Leserman had drawn out of his original capital $10,499.67; that Bernheimer's had increased $56,621.39; while Goldsmith had drawn out the whole of his and also owed the firm $897.99. After paying all the liabilities of the firm there remained, according to the report, $128,920 in the hands of the liquidating partner. This sum is carried to the capital account, and whether its disposition by the referee is correct, presents the first important inquiry. The interest of each partner in the partnership property is his share in the surplus after the partnership accounts are settled and all just claims satisfied. In this case, by the terms of the partnership, the partners were to contribute equally and divide profits and share losses equally from the beginning of the partnership to its dissolution. There is no evidence which requires or would permit any finding that this arrangement had been changed, nor are we referred to such finding. It would seem to follow that the division of profits and charge of losses should be in the proportion of one-third of each to each partner. To carry out that mode of adjustment as the one provided by the agreement of the parties, the advances made by either partner beyond the capital called for by that agreement should be treated as a debt due from the firm and paid out of the surplus before any division is made upon the partnership capital.

If that advance was not in strictness to be regarded as a debt during the existence of the firm, nor until the debts of the firm to third persons were satisfied, it came into that relation the moment those debts were paid, and the concern, as

regards its business and its outside obligations, wound up. This is an equitable disposition of the matter, for otherwise the larger the advance made for the firm the greater would be the share of losses, or if profits, the greater the share of profits accruing to the partner making the advance, in either case a result entirely opposed to the actual agreement of the parties, which exacted equality in both respects. Nor is the rule opposed to the authorities cited by the respondent.

Story, in speaking of the rights of partners says (Partnership, 348–348 a): "In taking the account between them upon an ordinary dissolution, each becomes chargeable with all the debts and claims which he owes to the partnership, and if any partner has made advances to the firm, and others have received advances from it, these do not constitute debts until the concern is wound up," and *Richardson* v. *Bank of England* (4 Myl. & Cr. 165), is to the same effect. That was a suit by the representatives of one partner, deceased, to have a general account taken of all the partnership dealings and transactions and to have its affairs finally wound up and closed. The situation of the various partners as to advances and overdrafts was much like the relative position of the partners in the case before us. One of the defendant's copartners had overdrawn, and upon motion that he be required to pay back the sum in question it was denied, upon the ground that until the accounts of the firm had been settled and the joint debts paid what may have been advanced by one partner or received by another can only constitute items in the account. From both authorities it is clear that, after the amount of profit and loss had been ascertained, the partner advancing might have his remedy, and the party who had overdrawn be subject to liability. Before dissolution and an accounting, the one who had advanced money could not compel payment by suit against the firm, for he was one of the firm and so one of the parties owing the money. After dissolution, and before account taken and payment of debts due to others, he could not enforce payment, for the dissolution worked no change in his position. But after these events happened he became entitled

to be paid the sum advanced before the moneys contributed to the firm were returned to the contributors.

Bernheimer was a contributor to capital; he was also in advance of that contribution, and the sum advanced must be repaid before the surplus can be ascertained; and from that surplus alone can there be distribution — then to each partner equally; and, if a loss is incurred, its ratio must be ascertained as originally agreed by the parties. The learned referee has not dealt with the appellant Bernheimer in accordance with these rules. He gives him one-third only of the surplus by reason of his original capital, and in accordance with the same theory the learned referee gives one other third of the surplus to Leserman, and the remaining third to Goldsmith. This method would be well enough if the surplus were sufficient to pay all. But it is not, and, moreover, the advance made by Bernheimer is left entirely unpaid. To cover it, therefore, the sum advanced is divided into three parts, and Bernheimer is given a judgment against Leserman for $18,873.72, or one-third; a judgment against Goldsmith for a like amount, or one-third, leaving him to bear a certain loss as to the remaining one-third, and imposing on him the risks of collection as against Goldsmith. We think this result is inequitable and not required by any rule or principle of law.

The sum advanced by Bernheimer over his $75,000 should be first paid from the partnership surplus, and the residue divided among the partners according to the partnership agreement. Of course, Goldsmith, having drawn out his whole capital, could be entitled to no part of the surplus, and Leserman's share would be diminished by reason of the sum already drawn by him. The losses entailed upon the firm by reason of Goldsmith's overdrafts of capital or otherwise, must, of course, be borne equally.

*Second.* We are also of the opinion that the learned referee erred in charging upon Bernheimer, as liquidating partner, the amounts credited to Goldsmith between the first of January and the 13th of March, 1874. The latter date was the day when, by deliberate and formal act in writing, the

dissolution was agreed upon and made effective. The letters of Leserman and the negotiations of the parties concerning it were before that inconclusive. It was, then, only that Bernheimer was empowered to act as liquidating partner, and at that time he "took exclusive charge" in that capacity, and continued as such in possession and control of the effects of the firm. Before that event occurred he had no other authority than that of one of three copartners, and it did not exceed that of Goldsmith, for whose acts he is now made responsible. Each partner was equally competent. Concerning it, the finding of the referee is: "That on the thirty-first day of December, 1873, without consultation with the plaintiff, Simon Leserman, and without advising him thereof, but after consultation with Jacob Goldsmith, an item of $3,000, which amount had been paid out of the moneys of the copartnership in May, 1869, on account of said Jacob Goldsmith, and had since that time been carried as a cash item on a loose slip of paper as chargeable to Jacob Goldsmith, was by direction of Isaac Bernheimer charged to the account of Jacob Goldsmith, and then by the direction of Bernheimer and Goldsmith was credited to Goldsmith's account and charged to profit and loss. That by this credit of $3,000 to Jacob Goldsmith so made a balance in favor of Goldsmith on capital account was forced, amounting to $2,102.01, and without such credit he would appear on December 31, 1883, as debtor on his capital account to the amount of $897.99. That all this was done without the approval, consent or knowledge of said Simon Leserman, and against the balance so found payments have been made."

It is, however, apparent that the thing complained of was only the final and natural act of a series which originated in 1869, when confessedly each partner had equal authority, and of which act each partner, by virtue of his relation to the others, must be charged with knowledge. But the objection to the item and the finding of the referee stand upon the assumption that the firm was, in fact, dissolved when the item of $3,000 went upon the books and credit was given to Gold-

smith on account of it. That assumption, we think, was erroneous. He was still a member of the firm and, as such, competent to draw the check on which the money was paid.

*Third.* We are of opinion that, in adjusting the capital accounts between the partners, interest should have been allowed upon the balances standing to their credit down to the 13th of March, 1874, which we are constrained to find was the time of actual dissolution of the firm.

*Fourth.* The remaining questions relate to the disallowance of expenses growing out of an action in favor of " The Combined Patent Can Company," and payment made to Goldsmith for services in defense of that action. The defense was commenced on the 11th of December, 1873, by the employment by the firm of counsel, and it continued, as the referee finds, until October, 1876, when the cause of action was settled by compromise, although it appears that counsel in the case were dispensed with and discontinuance of the suit directed as early as June 10, 1875. (1.) As to the expenses : The suit was in equity in the Circuit Court of the United States, and the bill of complaint charged that Bernheimer, Leserman and Goldsmith were copartners, and as such transacted business under the firm name of " The Oleophene Oil Company," and in the course of that business infringed certain patents owned or controlled by the plaintiffs therein. An injunction was asked for, and damages. The evidence shows that the case was of importance, and the counsel employed therein testified to its gravity. As to that and the apprehended results, no question is made. On the 6th of October, 1876, " The Oleophene Oil Company," a corporation which by purchase had succeeded the firm, turned over or sold its works to " The Combined Patents Can Company," and the latter executed a paper reciting that " in consideration of the payment to it of one dollar by said Isaac Bernheimer, Jacob Goldsmith and Simon Leserman, the receipt of which 'was acknowledged,' and for other good and valuable considerations," we do hereby release and forever discharge the said Isaac Bernheimer, Jacob Goldsmith and

Simon Leserman, of and from all actions, causes of actions, suits, controversies, claims and demands whatsoever, for or by reason of any matter, cause or thing in said bill of complaint set forth or claimed."

It is apparent that the suit grew out of the conduct of the firm in its proper business. A recovery would have involved the defendants in their partnership character, and in the absence of any special agreement to the contrary, we are unable to see why the items disbursed by either member of the firm in that litigation and for its benefit should not have entered into the partnership accounts, to be settled in the usual way.

The learned referee finds, in regard to this matter, that the release and settlement of the action was brought about in part by the agreement of Isaac Bernheimer and Jacob Goldsmith, not to carry on the oil business for twenty years, and the transfer of the stock in trade and the personal property of "The Oleophene Oil Company," incorporated, to "The Devoe Manufacturing Company," for $155,000, paid to Bernheimer and Goldsmith, no part of which is brought into this accounting. For that reason he disallowed the expenses of the suit. In view of other facts found and the uncontradicted evidence, this reason seems to us insufficient. It appears that after Leserman decided to retire from business, Bernheimer and Goldsmith and one Simon Bernheimer concluded to form a company, under the laws of the state, to carry on the same business as that of "The Oleophene Oil Company." They intended to alter and make additions to the works at the manufactory, with a view to the more rapid production of oil and the making of cans for its reception, and began to carry out this purpose by contracts in their own name as early as December, 1873. On the 13th of March, 1874, Bernheimer, the liquidating partner, leased to Simon Bernheimer the property and works of the firm at an annual rent of $15,750, with an option to Simon to purchase that and other property within a certain time at the price of $225,000. This was with the

knowledge and by the approval of Simon Leserman, but there is no evidence that he knew, as the fact was, that the lease and agreement were really for the company intended to be incorporated, nor that Bernheimer and Goldsmith were to be members thereof.

That corporation was formed and the bulk of the stock in trade of the late firm was on the 6th of April, 1874, transferred by Isaac Bernheimer to that corporation for the sum of $68,000. The option given Simon Bernheimer was exercised and the purchase completed by paying the sum of $225,000, partly in cash, partly by bond and mortgage, and the balance by assuming a mortgage, and the conveyance to him was for the benefit of the corporation. These sales and transfers were all set up by answer of the defendants in this action, and upon the accounting the various sums mentioned are fully stated. No exception was taken to them. The property sold was the property of the firm and sold as such; it was accounted for as such and the plaintiff had the benefit of his share of it. If at the time he approved of those sales he was in ignorance that his former copartners were benefited by and interested in them, he was not kept in ignorance, but during the process of accounting the fact was disclosed, and he might then have rejected the adjustment of the accounts upon the basis of the price received and shared with his former associates the profit, if any, made by them, or repudiating the sale altogether, held the liquidating partner responsible for the value of the property as it might be proven. He did neither. Indeed, the conduct of his copartners cannot be considered as in any respect to his prejudice. He did not intend to go on in business there or elsewhere. He was intending to retire absolutely. The property was to be sold, and unless an advantage was taken by the other parties and for their benefit, by reason of their situation, there was no ground for complaint.

It does not seem to have been so intended. But however that may be, he had in due season full knowledge of the whole matter. He had personally approved of the sales without knowing, indeed, of the interest of his former partners; he

knew of the sum realized, and, before accepting his share of it, was informed that both Bernheimer and Goldsmith occupied in part the position of purchasers — were members of the company. Having, after this notice, concluded to treat those sales as valid, his ratification relates back to the time of their original making and validates them from that time. They were all consummated before 1875, and the defendants were under no obligation to answer concerning the disposition of the same property made in 1876. Neither the avails nor benefits of it could, in any reasonable view, be required from the defendants. Their failure to bring them in, therefore, furnishes no reason for disallowing the expenses of the suit for which it is plain the copartners were, to some extent, liable. But if, upon a rehearing, it should appear that any portion of these expenses were made for the exclusive benefit of the new firm or organization, that portion would be properly disallowed to Bernheimer. (2.) And so in regard to payments made to Goldsmith for services in the canning suit after dissolution. It is conceded by the learned counsel for the respondent "that Bernheimer in settling a claim would have a perfect right to make a binding bargain with a stranger," but he denies that he could do so with Goldsmith, who occupied the relation of partner. By the articles of dissolution Bernheimer was expressly authorized to act for and in the place of the firm, and given authority to take charge of all the assets and collect and dispose of the same to the best advantage; to compromise and settle claims of the firm, and to pay and "meet all the obligations and debts of the copartnership and of the said assets." He of all the partners alone had this power. It was his duty to protect the property against diminution by unjust judgments, and we think the authority given him, if followed in good faith, was sufficient to justify an arrangement with Goldsmith to attend to the litigation so far as it affected the late firm, and his compensation for such services should, in the same proportion with the other expenses of the litigation, be allowed Bernheimer.

For the errors adverted to, and to enable the views

above expressed to be carried out, the judgment of the court below, and that entered against Bernheimer upon the report of the referee, should be reversed and a new trial granted, with costs to abide the event.

All concur, except Earl and Peckham, JJ., who agree, except as to power of liquidating partner to employ Goldsmith for a compensation to be paid to him.

Judgment reversed.