In the Matter of the Judicial Settlement of the Accounts of BRIDGET LUCY *et al.*, Administrators of CORNELIUS D. LUCY, Deceased.

*(Surrogate's Court, Herkimer County, Filed July 11, 1893.)*

TENANTS IN COMMON—USE OF PROPERTY FOR COMMON PROFIT.

If, by agreement between tenants in common, the common property is used for the purpose of making a profit, either tenant in common may have an accounting in equity of the rents and profits and disbursements, and the tenant to whom there is found a balance due will have an equitable lien upon and right to reimbursement out of the share of the common property from which such balance is found due.

2. SAME—RIGHT TO REIMBURSEMENT FROM ESTATE OF CO-TENANT.

The owners of a farm agreed that one of them should carry on a dairy and general farming business thereon, the products to be divided between them in a certain manner. The business was so carried on until the death of the one conducting it, who received the moneys from sales and mingled the same with his other money, and the other tenant received nothing. The estate proved insolvent. *Held*, that the co-tenant was entitled to be paid in full for his share of the profits out of the moneys so received, and, if necessary, out of the proceeds of any property owned by the parties in common and used in the business, and that only so much as remained after such payment should be considered assets for the payment of general creditors.

On January 1, 1891, Ambrose Arnold and Cornelius D. Lucy were the owners as tenants in common, each owning an undivided half of a farm of 160 acres, and a dairy of 40 cows upon it, situated in the town of Fairfield, N. Y. On or before January 1, 1891, Arnold and Lucy entered into an agreement that Lucy should, during the year 1891, carry on and conduct dairy and general farming business with the said farm and dairy, and that Arnold should have three-tenths, and Lucy should have seven-tenths, of the products of the farm. The principal product of the farm was cheese, and by agreement the milk produced from the dairy of the farm was taken to a cheese factory, and with the milk of many other patrons of the factory made into cheese, which cheese, after being cured, was sold by the salesman of the factory, and the money received for it checked out to the patrons in proportion to amount of milk contributed. The milk from the farm of Arnold and Lucy was credited at the factory by consent to Lucy, and the proceeds paid to him during his life, and after his death to his administrators.

Lucy carried on the farm business from January 1, 1891, to the time of his death, which occurred October 17, 1891, and after his death his widow, Bridget Lucy, on November 2, 1891, was, with John C. Murphy, appointed administrator of Lucy's estate, and the administrators carried on the farm business to January 1, 1892.

Of the products of the farm, aside from cheese, a portion was sold by Lucy, and the remainder by the administrators, and none of the moneys received from the business were kept separately from other moneys, either by Lucy or the administrators; and nothing has been paid to Arnold on account of his share in the product of the farm. The amount of money received by Lucy in his lifetime from sales of cheese by the factory was $577.93; from sale of butter was $50, from sale of pigs and pork was $40, from sale of calves was $44. After Lucy's death, his administrators received from sales of cheese made by the factory from milk taken to the factory before the death of Lucy, $225.31, and from milk taken to the factory after the death of Lucy, $182.56.

The administrators also received from sale of butter from the farm, $10, and from sale of pigs and pork, $39.

At some time during the year 1891 Lucy sold a bull from the dairy which was owned equally by Arnold and Lucy, and received the price, which was $25. In 1892 Ambrose Arnold died, and Thomas Arnold was appointed administrator of his estate. At the time of Lucy's death the money found in his possession was only $100. The first money received from the cheese factory by the administrators was $90, received by Mrs. Lucy and paid out by her. The other cheese, butter and pork moneys, received by the administrators, was mingled with the moneys received from sale of cows, horses and farming implements, etc. Part of the debts, the funeral expenses and expense of administration have been paid from this fund by the administrator.

On July 30, 1892, Nathan B. Arnold recovered a judgment against the administrators in the Supreme Court for the sum of $4,771.41, to be paid in due course of administration out of the assets. This proceeding is the final accounting of the administrators, and the foregoing facts have been stipulated by all parties, except those in default, and the same parties have stipulated to waive all question of jurisdiction of the surrogate to determine the questions presented.

The administrator of the estate of Ambrose Arnold claims that three-tenths of the proceeds of the farm products, viz.: $350.64, should be paid in full. This claim is controverted by Nathan B. Arnold, who contends that it must be treated as an ordinary debt, to be paid ratably with the other debts against the decedent.

P. H. McEvoy, for administrators; R. H. Smith, for Nathan B. Arnold; A. M. Mills, for administrator of Ambrose Arnold.

SHELDON, S.—It is well settled that a tenant in common of either personal or real property may have an action against his co-tenants in a court of equity for a partition of the common property, and if the interests of the parties require it such partition will be made by a sale of the property and a division of

the proceeds.   Tinney v. Stebbins, 28 Barb. 290; Tripp v. Riley, 15 id. 334; Andrews v. Betts, 8 Hun, 325; Shehan v. Mahar, 17 id. 130; Prentice v. Janssen, 7 id. 86; Smith v. Smith, 10 Paige, 470.

Where one tenant in common has the occupation and enjoyment merely of the whole of the common property, without any agreement with his co-tenants, express or implied, to render any thing for the use, and receives nothing in the nature of rents and profits from the use of the property, he cannot be called upon by his co-tenant to account or pay for the use and occupation, but if he receives rents and profits he may be called to account for them in an action for partition.   McCabe v. McCabe, 18 Hun, 154; Scott v. Guernsey, 48 N. Y. 124.

And such rents and profits are upon partition a lien upon the share of him from whom they may be due.   Scott v. Guernsey, 48 N. Y. 124.

If one tenant in common, with the assent of the other, lays out his money in repairs or improvements upon the common property, or if by agreement the common property is used for the purpose of making a profit, either tenant in common may have an accounting in equity of the rents and profits and disbursements, and the tenant in common to whom there is found a balance due will have an equitable lien upon and right to reimbursement out of the share of the common property from whom such balance is found due.   Green v. Putnam, 1 Barb. 500; Prentice v. Janssen, 7 Hun, 86; Dyckman v. Valiente, 42 N. Y. 564; Mumford v. Nicoll, 20 Johns. 634; Willard's Eq. Jur. 106; Wright v. Wright, 59 How. 186.

The reason of the rule is well stated by MERWIN, J., in the case last cited, as follows:   "The increase or rents are common property as much as the principal or the original estate.   When one, therefore, takes of the increase or rents, he takes a part of the common fund or property; and it may well be said that there is an implied agreement to have what he has received applied on his share, or that on division he will bring it in, to the end that it may be charged to him on division, and that a court of equity works out this result through the operation of an equitable lien."

When an agreement is made between tenants in common for the use of the common property, and sharing the profits obtained from such use, the tenants in common do not become partners generally, although such relation is sometimes called a special partnership for the particular adventure. Thus, in Mumford v. Nicoll, before cited, Chief Judge SPENCER, who wrote the prevailing opinion, says: "I must not be supposed to overrule the distinction between partners in goods and merchandice and part owners of a ship. The former are joint tenants, and the latter are, generally speaking, tenants in common, and one cannot sell the share of the other. But I mean to say that part owners of a ship may, under the facts and circumstances of this case, become partners as regards the proceeds of the ship, and if they are to be so regarded, the right of one to retain the proceeds until he is paid what he has advanced beyond his proportion is unquestionable."

The gist of the decision in Mumford v. Nicoll is stated as approved by FOSTER, J., in Dyckman v. Valiente, above cited, as follows: "And in Mumford v. Nicoll, 20 Johns. 611, it was held that where one of two part owners of a ship receives or gets possession of the whole funds of a vessel and of the voyage he has a right to retain them until he is paid or indemnified for what he has advanced or paid more than his share for outfits, repairs or expenses of the vessel for the particular voyage or adventure."

Although an agreement between tenants in common for the use of the common property for the purpose of making a profit or income, to be divided, may not constitute a partnership, yet after the undertaking has been commenced the rights and liabilities of the parties are to be determined upon the same principles as are applied by courts of equity to partnership transactions. King v. Barnes, 109 N. Y. 267, 15 St. Rep. 52; Dyckman v. Valiente, 42 N. Y. 551; Wilcox v. Pratt, 34 St. Rep. 477.

Ambrose Arnold and Cornelius D. Lucy entered into an agreement for the use of their common property, for the purpose of

making a common profit.   The contracting parties carried on the business provided for until the death of Lucy, and his administrators taking his place, the business was carried on by them, with the assent of the other party to the adventure, until the completion of the enterprise.   The proceeds of the business came to the hands of Lucy in his lifetime, and to the hands of his administrators after his death.   The administrator of the estate of Ambrose Arnold was entitled to go into a court of equity and have an accounting with Lucy's administrators of the year's business and the proceeds of it.   *Such an accounting has in effect been had,* and from it there appears to have been received by Lucy and his administrators as the proceeds of the year subject to a division the sum of $1,168.80, of which Arnold's share was $350.64; and it also appears that Lucy sold a bull which was owned in equal shares by Ambrose Arnold and himself as a part of the dairy, and received $25 for it, of which $12.50 would be properly added to the $350.64, making $363.14 as the amount found due the administrators of Ambrose Arnold upon the accounting.   The estate of Lucy is insolvent, the amount of assets to be used in payment of debts being less than $1,000, and the indebtedness amounting to over $5,000.   As a part of the assets there appears to have been received by the administrators over $400 as proceeds of the farm arising from the sale of cheese, also over $400 from the sale of Lucy's interest in the dairy owned in common with Ambrose Arnold.   Such being the facts, the administrator of Ambrose Arnold claims that only such part of the proceeds of the farm and of the common property as remains after the payment of his share, viz., $363.14, should be considered as assets applicable to the payment of general creditors.

The principal creditor, Nathan B. Arnold, resists this claim, and insists that the proceeds of the farm products, and other common property, sold by Lucy and his administrators, must be treated as though it were Lucy's individual property and as being general assets; and the amount shown to be due upon the accounting to the administrator of the estate of Ambrose Ar-

nold, as his share of the proceeds of the year's business, must be treated as an ordinary debt and only entitled to the same percentage of the assets as the other debts. I am of the opinion that there are equities founded upon the relations of the parties growing out of their undertaking for the use of the common property for the purpose of getting common profit that authorizes and requires that Ambrose Arnold's share of the profits be paid to him out of the money received from sale of the products of the farm, and, if necessary, out of the proceeds of any property owned by the parties in common and employed in the business. The learned counsel for Nathan B. Arnold asserts in his brief, upon the authority of Taylor v. Bradley, 39 N. Y. 129, that the contract between Ambrose Arnold and Lucy was in the nature of a partnership.

In this position I think the learned counsel is correct, and that the rights of Lucy's administrator in the common property must be determined by the rule that applies to the administrator of a deceased partner. In such a case, the administrator takes or retains, as assets, only such a part of the common property as may be found due after an adjustment of the partnership accounts upon equitable principles. Thomson v. Thomson, 1 Bradf. 24; Hooley v. Gieve, 9 Abb. N. C. 11; Leserman v. Bernheimer et al., 113 N. Y. 45, 22 St. Rep. 606.

The conclusion, therefore, is reached that the administrator of the estate of Ambrose Arnold must be paid in full out of the money received for the common property, and the remainder of the property in the hands of Lucy's administrators be distributed among his creditors ratably.