## SOPHIA STEVENSON *vs.* BEDFIELD ERSKINE.

In a deed of two lots of land, separated by intervening lots, the premises were described by metes and bounds and by distances, the starting point of the boundary line of the first lot being stated as at its northwestern corner 107 feet from M. Street, and that of the second lot as at its northeastern corner 307 feet from the corner of M. Street; and were further described by abuttals upon T. Street on the north, and on the south exclusively and respectively upon lots 44 and 47 on a plan, drawn six years previously, to which the grantor made reference as meaning to convey "the westerly portion of lot numbered 36 " and "the easterly portion of lot numbered 39, on said plan." And he further described the granted premises as lots 1 and 2, and lots 9 and 10, on another plan, drawn on the same date with the deed. In this second plan, which embraced only part of the territory included in the first, no express reference was made to M. Street, but figures noted at corners of the lots indicated that 107 feet and 307 feet were the respective distances of the northwestern corner of lot 1 and the northeastern corner of lot 10 from some point not indicated; and all the other distances in the deed corresponded with the distances in this plan. But in the first plan, in which M. Street was represented as running obliquely to T. Street, the northwestern corner of lot 36 and the northeastern corner of lot 39 were represented at distances respectively of 107 feet and 8 inches, and 307 feet and 8 inches,

from the southeastern corner of M. and T. streets. Assuming the relative courses of M. and T. streets to have remained unchanged during the time between the two plans, and following out the boundary lines of the granted premises from points 107 feet and 307 feet east from the southeastern corner of M. and T. streets, the first lot conveyed would include, besides the "westerly portion of lot 36," a strip 8 inches wide along the whole eastern portion of lot 35 on the first plan, and the second lot conveyed would not include a strip of the same width along the whole "easterly portion of lot 39;" and the southern abuttal of the first lot would not be exclusively on lot 44, nor that of the second lot exclusively on lot 47. But, applying the second plan to the first plan so that the westerly line of lot 1 on the former should correspond with the westerly line of lot 36 on the latter, and assuming the variation of eight inches between the measurements from M. Street to be due either to a difference of starting points on the line of M. Street, or to a variation in the relative courses of the streets during the time between the two plans, all the courses, distances and abuttals expressed in the deed would correspond with both plans. *Held*, that the statement of the starting point of the boundary line of the first lot conveyed in the deed, being ambiguous, must be controlled by the other calls of the description of the two lots, which were certain, and must be assumed to be at the point on T. Street which at the date of the first plan was the northwestern corner of lot 36 thereon indicated; especially if such a construction was in accord with the practical construction given to the deed by the grantees or their immediate assigns in erecting a house covering the whole area so bounded.

TORT in the nature of trespass *quare clausum fregit.* Writ dated August 17, 1866. The place of the alleged trespass was a strip of land eight inches wide bounding northerly on Trenton Street in East Boston. Trial in the superior court, before *Brigham*, J., who found these facts :

On April 1, 1845, Joseph Noble conveyed to Noah Sturtevant and Ebenezer Atkins land described in the deed as "two certain lots of land lying in that part of Boston called East Boston, bounded, described and situated as follows, namely : Beginning on the southerly side of Trenton Street 107 feet from Meridian Street ; there turning and running in a southerly direction 100 feet to Lot 44 on a plan hereinafter mentioned ; there turning at right angles and running in an easterly direction by said lot 38 feet ; there turning at right angles and running in a northerly direction 100 feet to Trenton Street ; there turning at right angles and running on said street 38 feet to the point of beginning ; hereby meaning and intending to convey the westerly portion of lot numbered 36 on a plan of the property of the Boyden Malleable Cast Iron and Steel Company, made by R. H. Eddy and recorded with Suffolk deeds at Lib. 448, at the close : also a lot beginning on the southerly side of Trenton Street 307 feet from the corner of Meridian Street

there running in a southerly direction 100 feet to Lot 47 on above mentioned plan; there turning at right angles and running by said lot in an easterly [westerly?] direction 37 feet 9 inches; there turning at right angles and running in a northerly direction 100 feet to Trenton Street; there turning at right angles and running on said street 37 feet 9 inches to the point of beginning; hereby meaning to convey the easterly portion of ot numbered 39 on said plan. The lots hereby conveyed are numbered 1, 2, 9 and 10, on a plan drawn by S. C. Bugbee, dated April 1, 1845."

The following are copies of so much of the two plans referred to as is necessary to an understanding of the case. The Eddy plan was dated May 1, 1839.

### EDDY PLAN.
Trenton Street.

### BUGBEE PLAN.
Trenton Street.

Noble, also, on January 23, 1846, made a quitclaim deed to Atkins and Sturtevant, releasing to them all his right and title to " two certain lots of land lying in that part of Boston called Eas⁺ Boston, bounded, described and measuring as follows, viz: On⊦ of them beginning on the southerly side of Trenton Street 107 feet 8 inches from Meridian Street; there turning and running in a southerly direction 100 feet to lot 44 on a plan hereinafter mentioned; there turning at right angles and running in an easterly direction by said lot 38 feet; there turning at right angles and running in a northerly direction 100 feet to Trenton Street; there turning at right angles and running on said street 38 feet to point of beginning; hereby meaning and intending to convey the westerly portion of lot numbered 36 on a plan of the property of the Boyden Malleable Cast Iron and Steel Company, made by R. H. Eddy and recorded with Suffolk deeds, Lib. 448, at the end." " The lots hereby conveyed are numbered 1, 2," " on a plan drawn by S. C. Bugbee, dated April 1, 1845." " This deed is made" " to correct errors in description in" the deed of April 1, 1845. And on the same date, January 23, 1846, Sturtevant and Atkins made a deed to Noble, also referring to Eddy's plan, and quitclaiming to Noble " any part f lot 35 on said plan which said Noble conveyed to us by deed," of April 1, 1845. But both of these deeds of January 23, 1846, as will be noticed, were subsequent to a conveyance by Sturtevant and Atkins to Hayward on October 1, 1845.

Under the deed of April 1, 1845, from Noble to Sturtevant and Atkins, the plaintiff derived her title, through the following mesne conveyances, (in all of which the description of the premises conveyed was the same as in that deed, so far as concerned the strip of land in controversy,) namely: Sturtevant and Atkins to James T. Hayward, October 1, 1845; Hayward to Daniel D. Stevenson, the plaintiff's husband, June 24, 1851; Daniel D. Stevenson to Sturtevant, and Sturtevant to the plaintiff, both October 27, 1857.

When Hayward made his conveyance to Daniel D. Stevenson, June 24, 1851, the more westerly of the two lots conveyed by him, being the same described in the deed from Noble to

Sturtevant and Atkins as " the westerly portion of lot num-
bered 36 " on the Eddy plan, and as the lots " numbered 1, 2 "
on the Bugbee plan, " was occupied by a dwelling-house which
was part of a block occupying said two lots and having a front-
age on said Trenton Street of thirty-eight feet; but no part of
said house then extended westerly beyond the division line be-
tween said lots numbered 35 and 36, as said line is indicated on
said Eddy's plan." Daniel D. Stevenson, previously to his con-
veyance in 1857 through Sturtevant to the plaintiff, made use,
for purposes of a way, of a strip of land eight inches wide, lying
on the westerly side of said division line and extending along
the whole of the easterly portion of said lot 35; and the year
prior to that conveyance he added to the house gutters and a
porch which extended that distance beyond the line. After
Daniel D., the plaintiff occupied the strip in the same manner,
under a claim of title, which, on and after May 25, 1866, was
denied by the defendant; and the acts of the defendant alleged
to be acts of trespass were done by him under a claim of title
in himself to the strip in controversy, and depended for their
justification upon his right under such claim, which he asserted
by virtue of a deed of that date to him from the heirs at law of
Joseph Noble, of a lot of land described as " beginning on the
southerly side of Trenton Street, so called, at a point 57 feet 8
inches easterly from Meridian Street; thence running easterly
on said Trenton Street 50 feet to lot numbered 36 on a plan of
land and property of the Malleable Iron Company, East Boston,
drawn by R. H. Eddy, dated May 1, 1839, and recorded with
Suffolk deeds at the end of Lib. 448; there turning and running
southerly on lot numbered 36 on said plan, 100 feet, to lot num-
bered 43; there turning and running westerly on lot numbered
43, 50 feet to lot numbered 34; there turning and running north-
erly on lot numbered 34, 100 feet to the point of departure on
said Trenton Street; containing 5000 square feet, and being lot
numbered 35 on said plan."

The lots numbered 35 and 36 on Eddy's plan were both
owned by Joseph Noble on April 1, 1845; " and he and his heirs
owned lot numbered 35 from that time until its conveyance to
the defendant."

On these facts the judge ruled that the plaintiff was not en-titled to recover; and found for the defendant. The plaintiff alleged exceptions.

*L. Child*, for the plaintiff.

*H. W. Muzzey*, for the defendant.

WELLS, J.    This is a question of boundary. Both parties derive title from one Noble, who was owner upon both sides of the disputed line.

The earlier deed from Noble, under which the plaintiff has title, was to Atkins and Sturtevant, April 1, 1845. By that deed, Noble conveyed, first, the westerly part of Lot 36; and, second, the easterly part of Lot 39, "on a plan of the property of the Boyden Malleable Cast Iron and Steel Company, made by R. H. Eddy, and recorded with Suffolk deeds, at Lib. 448." The first is conveyed as lots numbered 1 and 2; and the second as lots 9 and 10, "on a plan drawn by S. C. Bugbee, dated April 1, 1845." The westerly line of the first parcel runs from Trenton Street southerly 100 feet to Lot 44; and the easterly line of the second parcel runs from Trenton Street southerly 100 feet to Lot 47; and they bound southerly on those lots respect-ively. Upon reference to the plans, it is apparent that these abuttals are derived only from the Eddy plan; but the measure-ments are taken from the Bugbee plan alone. The Bugbee plan indicates no reference whatever to the lots or division lines laid down on the Eddy plan. But by applying the Bugbee plan to the Eddy plan, so that the westerly line of lot No. 1 may con-form to the westerly line of lot No. 36, every point of description will correspond, and every call of the deed will be satisfied, except the distances of the starting points from Meridian Street. (We disregard a palpable error in the direction of the southerly line of the second parcel.) The west line of lot No. 1 will then strike the corner of lot No. 44. The east line of lot No. 10 will con-form exactly to the east line of lot No. 39. These two lines are the extreme limits, east and west, of the Bugbee plan, which would seem to be a mere subdivision of lots 36, 37, 38 and 39 upon Eddy's plan. Those four lots being each fifty feet in width, make up a front of two hundred feet. The nearest corner

of No. 1 is given in the deed as 107 feet from Meridian Street, and the farthest corner of No. 10 as 307 feet. Adding together the width of the ten lots as severally given upon the Bugbee plan, and the width of a passageway, the aggregate is just two hundred feet In this respect the deed and both plans are consistent with each other.

The Bugbee plan makes no reference to Meridian Street in terms; but the deed adopts the figures, minuted at the front corners on Trenton Street, as distances from Meridian Street. Those distances are eight inches less than in Eddy's plan. The plaintiff contends that, as the deed fixes the starting point at one hundred and seven feet from Meridian Street, whereas the corner of lots 35 and 36, as given on the Eddy plan, is one hun dred and seven feet and eight inches from Meridian Street, her deed must be held to embrace eight inches in width from lot No. 35. This is the *locus* of the controversy.

Against this construction are the considerations that, although Noble, being the owner of lot No. 35, as well as of lot No. 36, might be supposed to be willing to cut off eight inches from that lot for the benefit of his new plan, if there were occasion for it, yet no such occasion appears. On the contrary, such a variation of the westerly line would occasion a similar variation of the easterly line, cutting off eight inches from lot No. 39, where it would be useless, as he does not appear to have owned the adjoining land. The west line of lot No. 1 will not strike No. 44, but will strike No. 43 eight inches from the corner of No. 44. Lots Nos. 1 and 2, called in the deed the westerly part of lot 36 on Eddy's plan, will in fact embrace part of lot 35, while lots Nos. 9 and 10, called the easterly part of lot 39, will not be in fact the easterly part of that lot, but will leave an intervening strip. These considerations are strengthened by the terms and form of the deed. The description of the first parcel is followed by the words " hereby meaning and intending to convey the westerly portion of lot numbered 36," &c.; and of the second parcel, likewise, by the words " hereby meaning to convey the easterly portion of lot numbered 39 on said plan," namely, Eddy's plan. The only reference to Bugbee's plan is in the last

clause, as follows : " The lots hereby conveyed are numbered 1 2, 9 and 10, on a plan drawn by S. C. Bugbee, dated April 1 1845." This language not only indicates no purpose to vary from the lines of the lots as laid down by the Eddy plan, but a clear purpose to adhere to those lines.

Undoubtedly the sale was made by the Bugbee plan, and that plan was prepared for that purpose; as the plaintiff contends. But the question is, whether that plan and the deed made from it varied the lines given by the Eddy plan, or were intended to conform to them. The plaintiff contends that they vary from those lines, because the starting point is fixed at a distance from Meridian Street eight inches less than is indicated on Eddy's plan for the corner of lot 35. But no monument or fixed point at Meridian Street is given, in the deed or in either plan, nor in the evidence, as the point from which the distance was or is supposed to have been measured. Meridian Street runs obliquely to Trenton Street, and therefore a difference in the measurement of the distance might result from a variation in the point of starting from the easterly line of Meridian Street, even if that were a fixed and certain line. The Eddy plan was made in 1839; and the Bugbee plan in 1845. There is no evidence that the lines of Meridian Street had been preserved unchanged, nor that they were established and made certain by fixed bounds. The case does not find what is the actual measurement from Meridian Street. For aught that appears, the 107 feet from that street as it now is, or as it was in 1845, may carry the boundary of lot 1 as far as to the corner of the original line of lot No. 36.

The two plans, being introduced, develop an ambiguity in the descriptions of the deed. The ambiguity consists in the uncertainty whether 107 feet from Meridian Street would fix the starting point at the corner of lot 36 or eight inches upon lot 35. The plaintiff does not show any fact to relieve the ambiguity, but relies upon the ambiguity itself to control the other descriptions in the deed, as to which no ambiguity exists. She fails therefore to give to the circumstance of a starting point 107 feet from Meridian Street such a certain and fixed character as

would warrant the court in making the other distinct and explicit calls of the deed yield to it as a controlling bound.

The conclusion to which we thus come accords with the practical construction given to the deed by the acts of the parties. Such construction is often held to settle doubtful boundaries so as to be conclusive upon them. The case finds that in 1851, when Hayward conveyed to Stevenson, the plaintiff's lot " was occupied by a dwelling-house which was part of a block occupying said two lots, [Nos. 1 and 2,] and having a frontage on said Trenton Street of thirty-eight feet; but no part of said house then extended westerly beyond the division line between said lots numbered 35 and 36, as said line is indicated on said Eddy's plan." As the entire frontage of the two lots was but thirty-eight feet, the house would exactly cover the lots, if bounded westerly by the west line of No. 36. But, if bounded eight inches upon No. 35, the house must have extended eight inches over the east line, upon the owner of lot No. 3. If this house was built before January 23, 1846, it is a significant act by Hayward or his grantors, bearing upon the construction of the deeds in 1845, which ought to affect the plaintiff, who claims under Hayward. If the house was built after January 23, 1846, then it may be regarded as an adoption by Hayward of the lines as established by the deed of correction between Noble and Sturtevant and Atkins. Having availed himself of the advantages of the line, as so established, upon the east side of his lot, he ought to be held to have acquiesced in the corresponding application of that deed of correction or definition to the west line.

*The exceptions must therefore be overruled.*