CHARLES WINCHESTER *vs.* GEORGE M. GLAZIER.

Suffolk. March 24, 1890. — October 24, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Partnership Articles—Accounting—Interest on Advances—Unwithdrawn Profits.*

A partnership between two, formed for a limited term, continued for many years thereafter under articles providing for semiannual settlements, and for the payment of the expenses, the salary of one partner, and interest at seven per cent on the capital "in full in this order, whether there are earnings to pay the next in order or otherwise." Credits of salary were entered in the semiannual settlements when there were no net profits, with the knowledge of the other partner, and without his objecting before the dissolution of the partnership. The salaried partner had notified his copartner at the beginning that he should demand an increase of salary if the business continued beyond the term, and thereafter he was credited with an increase, and such copartner's attention was specifically directed thereto several years before the dissolution, and he made no objection. *Held*, on a bill in equity for a partnership accounting, that the salaried partner was entitled to his salary, whether there were profits or not, and to the increase thereof.

Partnership articles between two provided that "the capital of neither shall be taken to pay interest to the other," but did not allude to advances or unwith-

drawn profits. One partner advanced large amounts to the firm, and permitted his interest and profits to accumulate, on all of which interest was credited to him at seven per cent for several years. The bookkeeper then charged back to him, with the copartner's approval, so much of such interest as was credited at times when there had been no profits. This was done without his knowledge at the time, and he objected to it at the next accounting. The firm throughout its continuance paid interest at the rate of seven per cent upon considerable sums which it had borrowed, and the advances so made were necessary and valuable to the business. *Held,* upon a bill in equity for a partnership accounting, that, down to the time objection was made, such partner was entitled to interest on his profits and advances when no profits were made; that thereafter he was entitled to interest only when there were profits; that after the dissolution of the partnership the advances and profits were to be regarded as a loan, and draw interest until paid; and that down to, but not including, the accounting when objection was made, the interest was to be at the rate of seven per cent, but thereafter, in the absence of any writing, as required by the Pub. Sts. c. 77, § 3, at the rate of six per cent only.

Upon a bill in equity between partners for an accounting, it appeared that the defendant, who had agreed to devote himself wholly to the business, became, with the plaintiff's consent, a member of another firm in which they were interested; that the defendant's share of the profits was at first divided between them in the same proportions as their partnership profits, the plaintiff receiving the larger share; but that afterwards, upon an equal division being made between them, the defendant with the plaintiff's knowledge received from the other firm a special salary, which he kept for his own use, and which was not entered on the books of the partnership. *Held,* that it was too late, after the dissolution of the partnership, for the plaintiff to claim a share in such special salary.

If one partner signs with his copartner, and for the latter's accommodation, a promissory note, and is obliged to pay one half thereof, and such payment is charged to the copartner upon the books, although not a partnership matter, without his objecting before its dissolution, such adjustment affords no cause of complaint to the copartner, upon a bill in equity filed by him for a partnership accounting.

BILL IN EQUITY, filed March 10, 1885, for a partnership accounting. The case was reserved, upon the pleadings and a master's report, by *Holmes,* J., and was as follows.

The plaintiff and defendant entered into a partnership on July 22, 1869, under the following articles, signed by them and under seal:

"Whereas the undersigned have this day associated themselves in a limited copartnership to carry on the business of dealers in small wares or furnishing goods in the city of Boston, of which the undersigned George M. Glazier is the general partner, and the undersigned Charles Winchester is the special partner, who has contributed to the common stock of the copartnership the sum of fifteen thousand dollars in cash: — Now

it is agreed by and between the undersigned as follows: that the said Glazier has contributed to the common stock of the firm the sum of five thousand dollars; that an account of stock shall be taken and a settlement made between the parties on the first of each January and July during the three years of the copartnership; that the current expenses of the business shall first be paid; that the sum of twenty-five hundred dollars per year shall next be paid to the said Glazier for his skill and services, to be wholly devoted to the business of the concern; that seven per cent interest shall next be paid to the said Winchester on his capital of fifteen thousand dollars; and then seven per cent interest shall be paid to the said Glazier on his said capital; and these several sums shall be paid in the order in which they are herein named, and shall each be paid in full in this order, whether there are earnings to pay the next in order or otherwise; but should there be earnings or profits sufficient to pay all the foregoing items in their order with a balance over, then this balance shall be called net profits, and shall be divided in the proportion of eighty per cent thereof to the said Glazier and twenty per cent thereof to the said Winchester. No large transactions shall be undertaken without consultation and agreement. Books of account shall be so kept as to show at any time the real financial condition of the concern. Neither the credit nor the funds of the concern shall be used in any way for the accommodation of any other parties, and the utmost care, caution, and diligence shall be exercised to make the concern respectable and successful. Any losses of capital stock shall be borne in proportion to the shares of each, and the capital of neither shall be taken to pay interest to the other."

The master's report, so far as material to the points decided, was as follows. Although the above articles provided in form for a limited partnership, the business carried on under them was that of a general partnership, in which the plaintiff and defendant enjoyed all the rights and were subject to all the liabilities of general partners. After the expiration of the three years named in the articles, the partnership was continued under them precisely the same as before, without any new agreement until June 9, 1884. The place of business of the partnership, which was chiefly transacted by the defendant, was in Boston,

and was visited at intervals by the plaintiff; and the firm books of account, which were always open to the inspection of both partners, were there kept.    Semiannual accounts were made up and settlements had throughout the continuance of the partnership.    In these accounts the defendant was credited with the full amount of his salary during each and every year of the partnership, including those of December, 1872, 1874, and 1875, of June, 1875 and 1876, and of January, 1880, although it appeared by them that no profits had been earned for the six months preceding in each case.    The plaintiff during all this time had full access to the books, and to some extent availed himself of it.    The plaintiff, who contended that, by the true construction of the partnership articles, no salary should be credited to the defendant when there were no profits with which to pay it, was a witness before the master, and the master found, in the absence of any express denial from him, that he had knowledge at least as early as 1878 that credits of salary were made to the defendant in half-years when no profits were earned; and there was no evidence that before the suit was brought he ever objected to the practice.

Beginning with 1874, the defendant had himself credited in the semiannual accounts with salary at the rate of $3,500, instead of $2,500, as before that time; and the plaintiff contended that he could recover from the defendant all sums credited to the defendant on salary account in excess of $2,500 a year.    In July, 1869, when the partnership was formed, the question of the defendant's salary was discussed by the partners.    The defendant, though dissatisfied with the sum fixed in the articles, yielded to the opposition of the plaintiff to any increase, but said that after the three years had expired, if the business continued, he should insist on more salary, and he testified that it was then agreed that he should have more.    The plaintiff was informed that the defendant was being credited with salary at the increased rate, having his attention distinctly called to it at the semiannual accounting of December 31, 1877; and it is quite probable that he was aware of it earlier, if he did not agree to it in advance. The plaintiff testified, that, when his attention was called to it on that date, he told the defendant, that if the concern made money enough he did not care much about his salary, but if they were

going to lose money and it was to come out of him he should not pay it. It did not appear that the plaintiff, after he knew it, took any measures to correct the matter, but allowed the increased amounts to be charged in the semiannual settlements.

The plaintiff contended that all sums of money standing to the credit of either partner, in excess of the capital contributed by each under the articles, were to be treated as loans to the firm, and that interest was to be allowed each six months upon them at the rate of seven per cent per annum, whether the half-yearly accounts showed a profit or not. The plaintiff, in addition to the amount of capital contributed by him, also paid into the concern from time to time moneys to a considerable amount, which were placed to his credit, together with interest on his capital and his share of the profits. The defendant, although not appearing to have paid in any money beyond the capital contributed by him, was also credited beyond his salary with interest on capital and his share of the profits. There was no express agreement between the partners as to the rate of interest to be allowed on these sums; but whenever either was credited in the books with interest thereon, it was at the rate of seven per cent per annum. The amount standing to the plaintiff's credit throughout the partnership was always very much in excess of his share of the capital, at the beginning of 1877 amounting to more than $25,000, while that to the defendant's credit, after increasing for a number of years, began to diminish, and there were times when the defendant had drawn out more than the whole amount to his credit, including his share of the capital, and was in debt to the firm. During the entire period of the partnership, the firm borrowed money for its business in considerable amounts, and paid interest on such loans at seven per cent per annum. Before the half-yearly accounting of June 30, 1877, interest at the rate of seven per cent was always credited to each partner on the full amount standing to his credit on the books, whether the accounts previously made disclosed a profit or a loss. At the accounting of that date, upon its being ascertained that there had been a loss as a result of the business of the preceding six months, no interest was credited to either partner. At the next accounting, a new bookkeeper, who had been employed by the firm and had noticed the provision in

the partnership articles regarding interest, acting under the advice of the lawyer who had drawn the partnership articles, with the sanction of the defendant, but without the knowledge of the plaintiff, undertook to correct what was deemed by him an error, and charged back to the partners the interest with which they had been credited in half-yearly periods of losses between December, 1874, and June, 1876. During this period, the amount so charged to the plaintiff was $7,688.55, and that charged to the defendant was $2,437.29. The plaintiff was informed of this correction and these entries in January or February, 1878. He did not assent to them in terms, and complained that he thought it hard that money that he thought belonged to him should be taken away. The defendant, however, insisted that it was right, and the plaintiff said no more at that time. A month or two later, the plaintiff brought up the matter again with the defendant. He then repeated that it was hard for him to lose the money, and offered to call it square if the defendant would give him $2,500. To this the defendant replied, that if he owed the plaintiff any of said interest he owed him the whole; that it had been a mistake, and he was sorry the mistake had been made, but the books as corrected were right. The plaintiff answered, "I think you ought to give me $2,500." There was no evidence that the subject was ever mentioned between the parties again, and the plaintiff took no further steps about the matter. After the early part of the year 1878, however, the plaintiff left his money in the firm, knowing that the accounts would be kept and made up upon a construction of the partnership articles which would deprive him of all interest in periods of no profits. Thenceforward interest was not credited to the partners on amounts standing to their credit on the books, whenever a semiannual accounting disclosed a loss in the business for the six months preceding.

The partnership had contributed to the capital of the firm of Ira Parker and Company, manufacturers of gloves, which was composed of the defendant and three other persons; and the plaintiff contended that he was entitled to twenty per cent of all the salary received by the defendant from that firm, with interest at the rate of seven per cent. The market for these gloves was found by the defendant. The plaintiff, with whose

sanction the enterprise was undertaken, indorsed the paper of Parker and Company to a considerable amount. The profits of the business were excellent, and the defendant's share thereof was divided between the plaintiff and the defendant in the same proportions as the profits of their partnership. The firm of Parker and Company expired by limitation, and the defendant, in order to secure the plaintiff's consent to its renewal, was obliged to agree to give him one half of his share of the profits. The defendant also received thenceforward from that firm, in addition to his half of the profits, a salary of $2,000 a year; and no part of this salary was paid or credited to the plaintiff, nor did it appear upon the partnership books. The defendant was obliged to travel about in disposing of the gloves manufactured by Parker and Company, and testified that his travelling expenses consumed nearly all of this salary. No objection was made by the plaintiff to the defendant's receiving this salary, although he knew of it as the master found, nor did he claim before the dissolution of the partnership to be entitled to any part thereof.

The plaintiff contended, that an amount paid by the defendant on a note signed by Palmer and Bates, by the plaintiff, and by the defendant, successively, was improperly charged to the plaintiff in the partnership accounts, and that he was entitled to recover the amount so charged to him. The plaintiff, who was a special partner in the firm of Palmer and Bates, the defendant not being in any way interested in it, applied to a savings bank for a loan to that firm. The savings bank required three names on the note to be given for the loan, and the defendant, at the plaintiff's request, signed the note beneath the names of that firm and of the plaintiff. The loan was received by Palmer and Bates, and used by them in their business, and the defendant derived no profit from it. The note was not paid at maturity, and the plaintiff and the defendant each paid one half of it to the savings bank. The half paid by the defendant was charged by him in the partnership accounts to the plaintiff, and appeared by a cash item in a transcript of the account sent to the plaintiff. There was no evidence that the plaintiff objected to the defendant's charging him the amount paid by him on this note before the dissolution of the partnership.

The plaintiff also contended that he was entitled to receive an amount paid by the partnership upon a note of $2,500, and charged to him. This note had no connection with the business of the partnership, and was originally given to the plaintiff by the defendant, at the request of the plaintiff, and for his accommodation. Neither the defendant nor the partnership received any benefit from it, and, after being renewed from time to time, it was finally paid by the partnership.

The case was argued at the bar in March, 1890, and afterwards was submitted on the briefs to all the judges, except *Morton*, J.

*J. G. Abbott*, for the plaintiff.

*R. M. Morse, Jr.*, ( *C. E. Hellier* with him,) for the defendant.

C. ALLEN, J. The first question is, whether the defendant was entitled to draw a salary in half-years when there were no net profits. This question is open to doubt if the partnership articles alone are looked at, but its determination does not depend merely upon the construction which would be given to the partnership articles taken by themselves alone. It is a general rule for the construction of written instruments, including deeds, contracts, statutes, and constitutions, that when the language is open to doubt, and parties whose interests are diverse have from the outset adopted and acted upon a particular construction, such construction will be of great weight with the court, and will usually be adopted by it. *Stone* v. *Clark*, 1 Met. 378. *Stevenson* v. *Erskine*, 99 Mass. 367, 375. *Lovejoy* v. *Lovett*, 124 Mass. 270, 274. *Chicago* v. *Sheldon*, 9 Wall. 50, 54. *Stuart* v. *Laird*, 1 Cranch, 299. *Cohens* v. *Virginia*, 6 Wheat. 264, 418. This rule has full force in the construction of partnership articles, and a practical construction given for several years by the partners themselves to language which would otherwise be open to doubt will usually be accepted by the court as conclusive.

The defendant was credited with the full amount of his salary in every year during the continuance of the partnership. The master finds that the plaintiff had knowledge, at least as early as 1878, that credits of salary were made to the defendant in half-years when there were no profits. At that time six such half-yearly credits had been entered, namely, in 1872, 1874, 1876, 1877, and twice in 1875. The master reports that there was no evidence that the plaintiff ever objected to this course

prior to the bringing of this suit, and that the plaintiff testified as a witness before him. The partnership continued for six years after 1878, and under these circumstances it must now be considered that under the partnership articles, as understood and acted upon by the partners, the defendant was entitled to his salary, whether there were profits of the business or not.

By a similar course of reasoning, though upon the facts the conclusion is less clear, the plaintiff must be held bound by the increase of the defendant's salary in 1874 from $2,500 to $3,500 a year. When the partnership began, the defendant said that after the expiration of three years, if the business continued, he should insist upon more salary; beginning with 1874 thenceforward his salary was credited to him upon the books at the rate of $3,500 a year; the plaintiff had access to the books, and the master reports that his attention was distinctly called to this fact on December 31, 1877, and that it was quite probable that he was aware of it earlier, if he did not agree to it in advance; and upon the further facts found by the master, it seems to be a fair conclusion that at that time he virtually waived all objections and assented to the increase.

The next question is, whether the plaintiff is entitled to interest upon his advances to the firm and his unwithdrawn profits in excess of the $15,000, which it was stipulated in the partnership articles that he should pay in as capital. It was provided in the articles that "the capital of neither shall be taken to pay interest to the other." So far as concerns the capital which the partnership articles call for, this may be taken as an express provision, which leaves no room for construction; and the plaintiff makes no claim for interest on his $15,000 of capital when there were no profits. But he contends that the above provision relates merely to the capital stipulated for in the partnership articles, and that it does not apply to his advances or profits left in the firm above that sum; and this appears to have been the practical construction adopted by the parties prior to the year 1877. Until that year interest at the rate of seven per cent per annum was uniformly credited on the books of the firm, both to the plaintiff and to the defendant, on all balances found due to them respectively. These books were kept under the eye of the defendant. If in 1877 he had for the first time

raised the objection that the plaintiff was not entitled to this allowance, his own course of conduct for eight years would justly have been held conclusive upon him of the understanding with which the firm had received and held these sums, and the provision in the partnership articles may well be considered to be limited to the interest on capital already therein referred to. There was no provision in the articles referring to advances or unwithdrawn profits, and the understanding of the parties in relation to them must be gathered from their acts. At the beginning of the year 1877, under the practical construction adopted by the parties, the plaintiff's advances and unwithdrawn profits amounted to $25,000 over and above the $15,000 of capital which he paid in under the provisions of the articles; while the defendant had recently drawn out so much upon his own account as to make himself indebted to the firm. Now, although interest might not be allowed to a partner for such advances and unwithdrawn profits in the absence of an agreement or understanding to that effect, yet slight circumstances may be sufficient to show such an understanding, and in the present case the circumstances are sufficient fairly to lead to that conclusion.

In the first place, the plaintiff proceeded at once to pay in considerable sums of money, and the balances taken from time to time show a rapid and nearly uniform increase of the amounts standing to his credit. There was an unbroken habit of crediting to each partner, upon the books of the firm, interest upon all balances thus placed to his credit, which is almost conclusive evidence of such an understanding. *Baker* v. *Mayo*, 129 Mass. 517. *Bradley* v. *Brigham*, 137 Mass. 545. *Harris* v. *Carter*, 147 Mass. 313. *Leserman* v. *Bernheimer*, 113 N. Y. 39. *Lloyd* v. *Carrier*, 2 Lansing, 364. *Pratt* v. *McHatton*, 11 La. An. 260. *Ex parte Chippendale*, 4 DeG., M. & G. 19, 36. *Millar* v. *Craig*, 6 Beav. 433. Moreover, during the whole continuance of the partnership after 1877, as well as before, the firm was borrowing money for its business in considerable amounts, and was paying interest for this borrowed money at the rate of seven per cent per annum. In addition to this, it appears that the plaintiff had added to the sum standing to his credit, and allowed it to increase by paying in money as aforesaid, and by the accumulation of interest and profits, with the expectation

that he would be credited with interest on it at the rate of seven per cent per annum, and with no expectation that the provision of the partnership articles would be construed to deprive him of interest on amounts standing to his credit in excess of his capital in half-yearly periods of losses, if such occurred, nor did it appear that the understanding and expectation of the defendant had been any different.

If, by reason of the acts of the parties, such was the right of the plaintiff in 1877, we cannot see that anything has happened since then which impairs that right. It appears that in that year a new bookkeeper was employed, who looked over the partnership articles and noticed the provision in regard to interest above mentioned, and consulted the lawyer who had drawn them up, but who, of course, had no power at that time to affect the rights of the parties by trying to explain what the articles meant, and under his advice, and with the knowledge and sanction of the defendant, but without the knowledge of the plaintiff, he undertook to correct what was deemed by him to have been an error in crediting interest to the partners in half-yearly periods of losses, and charged back to the partners the interest so credited, as well as the excess over the capital stipulated for as on the capital itself. At this time it was highly advantageous to the defendant, and disadvantageous to the plaintiff, to have this change made. The plaintiff had a large amount standing to his credit in the firm, and the defendant almost nothing. It is not likely that the plaintiff could at once withdraw the excess above his part of the capital without serious injury to the firm, which at the time was borrowing money in considerable amounts at seven per cent. It was not at this time in the power of the defendant, without the assent of the plaintiff, to change the construction of the articles which had thus been adopted and acted upon, and had thus become of the same force in respect to what was already paid as if written out therein. It becomes a question, therefore, whether the plaintiff gave any such assent to this change as to be binding upon him. It is certainly true that his protests against the change might have been more vigorously expressed than they were, but the facts reported by the master are insufficient to show an assent thereto on his part. We are, therefore, brought to the conclusion, that the

change by which the interest was charged back to the partners was unwarranted, so far as concerns the interest upon the sums standing to their credit in excess of the capital mentioned in the partnership articles. In respect to advances made to the firm, and unwithdrawn profits left with it, after the accounting of January 31, 1878, the case stands differently. After that time the defendant did not intend to allow any interest except when there were profits, and the plaintiff knew that he did not. Upon any new advances, or new profits, which were left with the firm, no interest should be reckoned, since such was not the understanding of the parties.

It must further be considered at what time interest should cease upon the sum which on June 30, 1877, stood to the plaintiff's credit in excess of his $15,000 of capital. The interest on the $15,000 of capital when profits were made would, of course, cease with the dissolution of the firm. The excess above the capital stipulated for stands more upon the footing of a loan, and in such case would bear interest until repaid. If the firm had not had the benefit of the plaintiff's money, it would have been under the necessity of borrowing money elsewhere, or of curtailing its business. It seems to be more in conformity with the understanding of the parties to treat the excess standing to the plaintiff's credit on June 30, 1877, as a loan, to be repaid with interest before any division of profits should be made, the interest to run until repayment. *Morris* v. *Allen*, 1 McCarter, 44, 47. *Ex parte Chippendale*, 4 DeG., M. & G. 19, 36. *Wood* v. *Scoles*, L. R. 1 Ch. 369. Interest at the rate of seven per cent having been credited at all prior accountings, the plaintiff was entitled to retain that amount. So far, however, as the understanding for interest remained executory, only six per cent can be allowed, the agreement not being in writing. Pub. Sts. c. 77, § 3. *Marvin* v. *Mandell*, 125 Mass. 562, 564.

A further question arises upon the claim of the plaintiff to be allowed twenty per cent of the salary received by the defendant from the firm of Ira Parker & Co. The defendant became a member of that firm with the plaintiff's consent, and at the beginning his share of the profits was divided between the plaintiff and the defendant in the same proportions as the profits from their regular business. When a renewal of that partner-

ship was made, it was agreed that the defendant's share of the profits thereof should be divided equally between the plaintiff and the defendant; but the defendant thenceforth received a special salary from that firm of $2,000 a year, which he kept for his own use. Upon the facts stated by the master, the plaintiff is not entitled to share in this. He knew the facts, and no entry of this salary was made in the books, and no claim to share in it was made by the plaintiff till after the dissolution of his partnership with the defendant.

The Palmer and Bates note appears to have been signed by the defendant for the plaintiff, and the defendant was entitled in some form to recover the amount paid thereon by him from the plaintiff. As a method of accomplishing this result, it was charged in the partnership account, and although it was not a partnership matter, yet this method of adjusting a matter between the partners might properly be adopted, if not objected to. No wrong to the plaintiff appears in this transaction.

The same considerations apply to the note for $2,500 as to the Palmer and Bates note.

Unless the parties agree, the account will be stated by the master in accordance with these views.

*Ordered accordingly.*