NYE v. UNITED STATES (four cases).

GAGE et al. v. SAME (two cases).

Nos. 2749, 2750, 2859, 3053, 3056, 3100.

District Court, D. Massachusetts.

Sept. 6, 1933.

Fred T. Field, Harris H. Gilman, and Goodwin, Proctor, Field & Hoar, all of Boston, Mass., for petitioner Nye.

Merrill S. June, of Worcester, Mass., and Harris H. Gilman, of Boston, Mass., for petioners Gage and another.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass.

LOWELL, District Judge.

These cases involve the excess profits tax for the year 1917 on the partnership of J. Russel Marble & Co. The firm and its predecessors had been engaged for many years in the sale of oils, starches, and heavy chemicals, largely as commission merchants. It was reorganized on January 1, 1917, by the dropping of one partner, Eager, the other partners, Marble, Nye, and Woodward, continuing the business. In arranging the payment to Eager, the profits due him according to the books, as well as his contribution to capital, were paid him. He claimed a further payment for the value of his share of the good will of the firm. The continuing partners refused to give him anything for good will; an adjustment was made by a further payment of $50,000. This was given to him by them as his share of the value of contracts for the sale of chemicals on commission. The government contends that the extra payment was for good will. As I view the situation, it is unnecessary to decide whether the extra $50,000 was paid to Eager for good will or for the value of the contracts.

The amount of the tax depends on the meaning of "invested capital" in the 1917 tax act (40 Stat. 306, § 207). See La Belle Iron Works v. U. S., 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998. The general capital of the firm was $100,000, of which Marble contributed $60,000, Nye $30,000, and Woodward $10,000. There was also a so-called "special capital" of $337,743.37, consisting of profits left in by the partners as loans to the firm. Marble's share of this was $174,327.46, Nye's share $124,929.50, and Woodward's share $38,486.41. These two forms of capital were shown on the books. There was no entry on them for good will, and the value of the contracts did not appear there. The taxpayer contends that invested capital includes: (1) The general capital of $100,000; (2) the so-called special capital of $337,743.37; and (3) the value of the contracts. The government admits the first, but denies the other two, having changed its position as to the second item. In the tax as originally computed by it, the government had allowed this special capital as part of the "invested capital," but changed its computation, too late, however, to collect the revised tax.

■ The general capital of $100,000 is admitted to be invested capital. The special capital, No. 2 in the above list, is not allowable as invested capital, as it consists of loans from the partners, and the 1917 act specifically bars borrowed money. While these loans were used in the business, they are just as much borrowed money as if they had been procured from strangers. Bowers v. N. Y. Trust Co. (C. C. A.) 9 F.(2d) 548. The status of the contracts is in doubt.

The continuing partners paid the retiring partner $50,000. For what? To get rid of him, perhaps, but the payment was based on the value of his share in the old firm. It was for contracts or good will. In either case the item was allowable. The act of 1917 allows as invested capital a payment made before March 1, 1917, for "good will, trademarks * * * or other intangible property" for a sum not more than 20 per cent. of the total interests or shares in the partnership.

■ The partners were commission merchants, a kind of business which did not require a large capital. They did not carry a large stock of merchandise, as under the terms of their contracts they could pay the manufacturer after they had sold the chemicals. They paid nothing for the contracts, which they were able to get on account of their excellent reputation in the trade, their good will, in short. It seems clear to me that the firm is entitled to treat as invested capital some sum of money as representing good will or contracts. Eager's share in the old firm was a little less than one-third. The taxpayer contends that its share of the intangibles is a little more than three times what it paid to Eager—$157,900 to be exact. This contention I consider sound with the qualification that under the law the limit for intangibles is 20 per cent. of the total interests or shares in the partnership. This amount will have to be computed.

■ The taxpayer further contends that the contracts should be treated as wasting assets entitling it to depreciation. This contention is unsound. Depreciation is allowed because the owner must replace the wasting asset. He is allowed the cost of replacement. U. S. v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054. In the present case the contracts cost the firm nothing, and no expenditure is necessary for their replacement. The result is that, in addition to the capital of $100,000, the taxpayer should be allowed to treat a sum to be computed as invested capital for the value of the intangibles, that it should

not be allowed the special capital, and is not entitled to depreciation.

■ The amount of the tax should be computed in accordance with the foregoing opinion. It may chance that the taxpayer is entitled to a refund, but that the government might have levied a larger tax which is now outlawed. In that case the taxpayer cannot recover. Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293.