**NYE et al. v. UNITED STATES.**

No. 3072.

Circuit Court of Appeals, First Circuit.

March 5, 1936.

As Modified on Petition for Rehearing.

July 7, 1936.

458

Robert E. Goodwin, of Boston, Mass. (Merrill S. June, of Worcester, Mass., and Allan H. W. Higgins, Henry B. Hosmer, and Goodwin, Procter & Hoar, all of Boston, Mass., on the brief), for appellants.

Frederick W. Dewart, of Washington, D. C. '(Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Norman D. Keller, Sp. Assts. to the Atty. Gen., and Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. to the U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This case with five others, ordered consolidated upon appeal by the District Court

of Massachusetts, includes the following, 4 F.Supp. 527:

Edith E. Nye, Administratrix, et al., v. United States, numbered 2859 on the docket of the District Court, which is a suit originally brought by representatives of a deceased partner, J. Russel Marble, and by Arthur E. Nye and Rufus S. Woodward, two surviving partners of a partnership under the name and style of J. Russel Marble & Co., and now being prosecuted by the respective representatives of the partners, to recover for overpayment of war excess profits taxes for the calendar year 1917.

The case of Gage, Executor, v. United States, numbered 3056 on the docket of the District Court, is an action originally brought by the executors of J. Russel Marble, a member of the partnership of J. Russel Marble & Co. (and now prosecuted by the surviving executor) on behalf of the decedent, Marble, individually to recover for overpayment of income taxes assessed on the decedent with respect to income received during the calendar year 1917.

The case of Gage, Executor, v. United States, numbered 3053 on the docket of the District Court, was brought by the executors of the will of J. Russel Marble in his behalf and in his individual capacity to recover for overpayment of taxes assessed upon him for income received by him as a member of the partnership during the year 1918.

The case of Edith E. Nye, Administratrix, v. United States, numbered 3100 on the docket of the District Court, was originally brought by Arthur E. Nye, since deceased, a member of the partnership of J. Russel Marble & Co., to recover for overpayment of taxes assessed upon him individually with respect to income received by him during the calendar year 1917.

The case of Edith E. Nye, Administratrix, v. United States, numbered 2749 on the docket of the District Court, was originally brought by Arthur E. Nye, since deceased, to recover for overpayment of taxes assessed upon him individually with respect to income received by him as a member of the partnership during the year 1918.

The case of Edith E. Nye, Administratrix, v. United States, numbered 2750 on the docket of the District Court, was originally brought by Arthur E. Nye, since deceased, in his individual capacity, to recover for overpayment of income taxes assessed upon him for income received by him as a member of the partnership for the year 1919.

The several cases involve the question of excess profits taxes of the partnership for the year 1917, and the income taxes of the individual partners, Marble and Nye, for the years 1917 and 1918, and as to Nye for the year 1919.

The facts out of which these cases arose are briefly as follows: J. Russel Marble, Arthur E. Nye, Rufus S. Woodward, and Charles E. Eager had for a number of years prior to 1917 been engaged in the business of buying and selling heavy chemicals, oils, and other similar merchandise, doing business under the name of J. Russel Marble & Co. This partnership was formed under articles of agreement entered into under date of January 1, 1909.

In the latter part of the year 1916 the partners agreed that the old partnership should be dissolved as of December 31, 1916; that Eager should withdraw and a new partnership consisting of Marble, Nye, and Woodward would continue the business, whereupon Marble, Nye, and Woodward entered into a written partnership agreement which became effective as of January 1, 1917.

Just prior to the dissolution of the old partnership, a controversy arose as to the amount which Eager, the retiring partner, was entitled to be paid for his interest in the old partnership; Eager contending that he should be paid an amount in excess of his specified interest in the net assets at the date of dissolution, and the other three partners contending he was entitled only to certain specific percentages. This controversy was adjusted by an agreement of the new partnership to pay Eager, the retiring partner, the sum of $50,000 in cash, in addition to his percentage interest in the net assets of the business.

The new partnership agreement provided that the capital stock of the new partnership should be $100,000, of which the said Marble contributed and paid in the sum of $60,000; said Nye contributed and paid in the sum of $30,000; and the said Woodward contributed and paid in the sum of $10,000.

The partnership agreement further provided that, in addition to the general capital above stated, the said partners contributed to the business a special capital, so called, consisting of their respective shares of the accumulated profits of the old partnership: Marble, the sum of $174,-

327.46; Nye, the sum of $124,929.50; and said Woodward, the sum of $38,486.41.

It was expressly agreed, however, in the new partnership agreement, that such contribution of accumulated profits by Marble, Nye, and Woodward should be considered as a debt due from the new partnership to Marble, Nye, and Woodward, respectively, and, in the event of the liquidation of the business of the firm, said sums should be repaid before any distribution of firm assets.

The Act of October 3, 1917 (40 Stat. 300), to provide for the expenses of the preparation for and the conduct of war, imposed what were termed war excess profits taxes on the net income of the partnership above certain percentages, with a credit based on a certain percentage of the invested capital, plus a fixed sum in the case of partnerships of $6,000. The act also defined in section 207 (40 Stat. 306) what was included in invested capital as follows:

"As used in this title 'invested capital' does not include * * * money or other property borrowed."

By agreement of counsel and consent of court, the six cases were tried together and were heard on July 13, 1933, before Judge Lowell without a jury. In case numbered 2859, involving the war excess profits taxes, the Commissioner just before the trial filed a motion to amend the answer of the United States, which was allowed, excluding from invested capital as "borrowed money or property" the contributions of the several partners designated as special capital, which the Commissioner in his previous computations allowed as invested capital. Stipulations as to facts were filed in the several cases, and by agreement of counsel are included in the appeal record. It was further stipulated that the facts set forth in the stipulation of facts in the partnership case numbered 2859 should be taken as applicable to each of the other cases so far as pertinent.

The District Court found all the facts as stated in the stipulations. Oral testimony was taken at the trial, and a single record was made for all the cases. The cases were argued by counsel before Judge Lowell on July 18, 1933. Numerous requests for findings of fact and rulings of law were presented to Judge Lowell by counsel.

On September 6, 1933, Judge Lowell filed a memorandum opinion, but with the understanding that a later day would be fixed for further hearing. Owing to Judge Lowell's death on November 30, 1933, no further hearing was held before him, nor did he ever pass on the requests of the petitioners for findings of facts or rulings of law. Counsel then suggested that the cases should be tried de novo before any judge of the District Court. This motion was denied by Judge Brewster, and the parties subsequently entered into a stipulation as to all the cases, which provided that the petitioners would waive any exceptions to the denial of their motions for a trial de novo by reason of the death of Judge Lowell, and that the District Court should proceed with the trial of the cases and consider the testimony, depositions, and exhibits and any evidence in all of the cases.

The right of the parties to an appeal from any findings or rulings contained in the opinion of Judge Lowell and any findings, rulings, or refusal to find or rule made by any judge of the District Court was preserved to the parties.

The cases were later heard by Judge Brewster and additional requests for findings of facts and rulings of law were made before him; it being stipulated that he might make such additional and supplemental findings of fact and rulings of law as might be necessary for the proper determination of the issues in the several cases not inconsistent with the memorandum opinion filed by Judge Lowell.

Judge Lowell held in his memorandum opinion that the invested capital of the partnership was $100,000; that the special capital, so called, was in the nature of "borrowed money or property," and as such was excluded from invested capital within the meaning of section 207 of the 1917 act. He did find, however, that the new partnership's interest in the executory contracts was of the value of $157,900, but under the Act of October 3, 1917, § 207 (a), it could only be allowed as a part of the invested capital to the amount of 20 per cent. of the tangibles paid in as general capital, and that the total invested capital under this ruling was $120,000.

Judge Brewster ruled consistently with the findings and rulings by Judge Lowell that the tangible invested capital of the partnership during the year 1917 was $100,000; that the contributions of the several partners designated as special capital and consisting of accumulated profits of the

old partnership respectively due to each partner, and totalling $337,743.37, was in the nature of "borrowed money or other property," and could not, under section 207 of the Revenue Act of 1917, be considered as invested capital; that the executory contracts for which the partnership paid Eager $50,000 for his share of 31½ per cent. had a value of $157,900, and were properly considered as a part of the invested capital of the new partnership, but only to the extent of 20 per cent. of the tangible or general capital as being the limit permitted by section 207 (a) of the act of 1917, thus making the invested capital $120,000.

Judge Brewster ordered judgment for the defendant in all cases except in the case numbered 3056, brought by the executors in behalf of J. Russel Marble individually in which he ordered judgment for $481.30 as an overassessment.

Several claims for refunds were filed in behalf of the partnership and by Marble and Nye as individuals for the years 1917 and 1918, and by Nye for the year 1919, which were disallowed.

Exceptions were taken by the petitioners to the rulings of Judge Lowell in his memorandum opinion, and to the findings and rulings of Judge Brewster, and assignments of error were filed.

In brief, the issues raised by the assignments of error are:

(1) Whether the so-called "special capital" of the partnership was "borrowed money or other property," or whether it should be included in "invested capital."

(2) Whether the contracts acquired by the partners, of which the new partnership had the benefit, can be included in "invested capital" and to what amount.

(3) Whether the partnership for the year 1917 and the individual partners for the years 1917, 1918, and 1919, in computing the net income of the partnership, are entitled to a deduction for depreciation of the contracts, it being agreed that 56½ per cent. of the contracts were fulfilled during the year 1917, 25 per cent. during the year 1918, 12¾ per cent. during the year 1919, and 5¾ per cent. during the year 1920.

(4) Whether the individual partners may assert in these actions the right to deduct, from the income received by each of them from the partnership, their proportionate share of the amount of excess profits taxes actually assessed and paid by the partnership, unless this claim is raised as an issue in the pleadings and is contained in any claim for refund.

The issue of whether the several contributions of the partners to the new partnership of the sums of accumulated profits of the old partnership constitutes invested capital is the most important issue as bearing on the amount of the excess profits taxes and that of the individual partners for the year 1917.

The partnership agreement for the new partnership was drawn up before the passage of the act of 1917 in October of that year. Clause II, as appears above, provided for a "general capital" and in a separate paragraph for contributions of certain amounts by each partner of accumulated profits of the old partnership, which it designated as "special capital"; but in an additional paragraph of the same clause II provided that this contribution of accumulated profits shall be considered as a debt due from the partnership to the partners, and, in the event of liquidation of the finances of the firm, shall be repaid to the partners before any distribution of the firm assets.

Article X of the agreement provides that the partners shall be paid interest on both the general and special capital at the rate of 6 per cent., and all interest paid to partners shall be charged in the expense account of the firm like any other item of expense, and be deducted before any division of the profits is made.

Under article XIII, in case of liquidation, the proceeds, after paying the debts of the firm and paying to each partner the amount of capital he then had in the business, shall be divided between the partners in the same proportion as the earnings of the partnership are divided, as provided in article III, viz.: 47½ per cent. to J. Russel Marble, 47½ to Arthur E. Nye, and 5 per cent. to Rufus S. Woodward.

Undoubtedly, if the partnership agreement had been drawn after the passage of the 1917 act in October, it would have provided differently and made it entirely clear whether the contributions by the several partners of profits to the firm of cash, merchandise, and other personal property accumulated under the old partnership was invested capital or in the nature of a loan. It is expressly provided, however, that the total amount of the contributions shall be considered as a debt due from the partner-

ship to the respective partners contributing the same. The capital stock of the partnership is expressly limited in said article II to $100,000; interest is allowed on both the general capital and the contribution of accumulated profits of the old partnership at the rate of 6 per cent., and all interest so paid is made chargeable to the expense account of the firm like any other item of expense, and shall be deducted before any division of the profits is made, although article 33 of Regulations 41 issued by the Treasury Department interpreting the Revenue Act of 1917 provided that, in computing net income for the purpose of determining an excess profits tax, a partnership would be allowed to deduct amounts paid to a partner during the year as interest on a bona fide loan, but no deduction for so-called interest based on invested capital would be allowed.

Article XIII of the partnership agreement further provided that, in case of liquidation of the partnership, the proceeds of liquidation, after paying the debts of the firm and paying to each partner the amount of capital he then actually had in the business, shall be divided between the partners in the proportions provided in article III of the agreement as above set forth.

The interpretation of these articles of agreement is, of course, a question of law. The provisions are practically the same as those provided in the articles of agreement for the old partnership drawn in 1909, and the provision as to "special capital" and interest, that it should be considered as a debt due from the partnership to the several partners in proportion to the contribution of each, must be interpreted in the light of the earlier provisions and in view of the new provisions in the Revenue Act of 1917.

The concept of invested capital is a purely statutory concept. It does not by the terms of the statute include "borrowed money or other property."

These contributions to the new partnership were apparently made without consideration, except the agreement that in case of liquidation they were to be repaid before any distribution of the firm assets, and the payment of interest which the agreement provided should be treated, not as profits paid to the partners, but as an expense of the partnership to be deducted before the profits or net income of the

partners were determined. It does not appear that these contributions were made for any definite interest or share in the partnership. Landesman-Hirschheimer Co. v. Commissioner (C.C.A.) 44 F.(2d) 521. We think they have sufficient characteristics of a debt as to require the approval of the rulings of Judge Lowell and Judge Brewster in this respect, viz., that they were "borrowed money or other property" within the meaning of section 207 of the Revenue Act of October 3, 1917. Interest should be allowed on loans.

It is urged that a partner cannot become a creditor of a partnership to which he belongs. This is true under the common law, but it is not strictly true in equity in case of liquidation of a partnership. Winchester v. Glazier, 152 Mass. 316, 25 N.E. 728, 9 L.R.A. 424; Cutting v. Daigneau, 151 Mass. 297, 23 N.E. 839; Bowers v. New York Trust Co. et al. (C.C.A.) 9 F.(2d) 548; Henderson v. Ries (C.C.A.) 108 F. 709, 714.

The second issue raised by the petitioners is whether contracts entered into by the old partnership, some of which, at least, had four more years to run, and which were turned over to the new partnership, should be considered as a part of the invested capital of the new partnership, and be depreciated at the rate that the contracts were fulfilled in the years 1917, 1918, 1919, and 1920.

When the old partnership was dissolved and the accounts of the retiring partner, Eager, were adjusted, a disagreement arose as to the interest of the retiring partner in these contracts, which was adjusted by the payment to him of $50,000. While Judge Lowell did not determine whether the $50,000 was paid to the retiring partner for his share of the contracts or for good will, Judge Brewster held that it was paid for the interest of the retiring partner in these contracts; and, as his interest in the partnership assets, after deduction of capital, was $31\frac{2}{3}$ per cent., the remaining part, or $68\frac{1}{3}$ per cent., of the contracts were of the value of $107,900, and that their total value, therefore, was $157,900. These contracts, though intangible assets, must be reckoned as invested capital, but under section 207 (a) (3) (b) of the October, 1917, act, to the extent of 20 per cent. of the total shares of invested capital, which should include both the general capital of $100,000 and the value of these intangibles of $157,900.

This follows from the requested findings of fact filed July 18, 1933, numbered (1), (2), (3), (6), (7), and (8), which were found by Judge Brewster and which are as follows:

"(1) J. Russel Marble & Company, a partnership formed on January 1, 1917, the partners in which were J. Russel Marble, Arthur E. Nye and Rufus S. Woodward, purchased from Charles E. Eager on January 2, 1917, the 31⅔ percent interest of said Eager in and to the contracts in evidence in this case, for $50,000.

"(2) All of the contracts in evidence in this case had a fair market value January 1, 1917, of $157,900.

"(3) The 68⅓ percent interest in said contracts belonging to J. Russel Marble, Arthur E. Nye and Rufus S. Woodward were purchased by the said partnership of J. Russel Marble & Company, formed on January 1, 1917, *in exchange for and with interests or shares in the partnership.*" (Italics supplied.)

"(6) That in computing invested capital of the partnership under the Revenue Act of 1917, cash paid in and tangible property paid in other than cash, also intangible assets purchased for cash, are included in invested capital, together with the fair market value of intangible property bona fide purchased prior to March 3, 1917, for and with interests or shares in the partnership to an extent not exceeding, on March 3, 1917, 20 percent of the total partnership assets.

"(7) That the said contracts were intangible assets and 68⅓ percent thereof, having a value of $107,900, was purchased with interests or shares in the partnership prior to March 3, 1917, and may be included in invested capital to an amount not to exceed, on March 3, 1917, 20 percent of the total capital of the partnership.

"(8) That the said contracts were intangible assets and 31⅔ percent thereof was purchased for cash by the partnership of J. Russel Marble & Company and may, therefore, be included in invested capital in the full amount of the purchase price thereof."

Again, in the petitioners' request for findings of fact filed April 30, 1934, the following were found and allowed by Judge Brewster:

"(6) Among the assets of the former partnership was the group of over four hundred contracts admitted in evidence in this case.

"(7) The new partnership acquired the group of contracts admitted in evidence in this case and received substantial income therefrom in 1917.

"(8) The new partnership acquired the contracts formerly owned by the old partnership from the individuals, J. Russel Marble, Arthur E. Nye, Charles E. Eager and Rufus S. Woodward."

"(10) The interest of J. Russel Marble, Arthur E. Nye and Rufus S. Woodward in said contracts was acquired for and with interests or shares in the partnership issued prior to March 3, 1917, as provided in Revenue Act of 1917, title 2, § 207 (a).

"(11) The payment of $50,000 by the new partnership to Charles E. Eager January 2, 1917, was made on account of the contracts for the purchase and sale of merchandise admitted in evidence in this case."

"(14) The value of said group of contracts was not less than $157,900 on January 1, 1917."

On April 30, 1934, the petitioners also requested the following rulings of law, which were allowed by Judge Brewster:

"(4) The group of contracts in evidence in this case are, as a matter of law, to be classified as 'intangible assets' and as such are to be included in computing the amount of the invested capital of the partnership in accordance with the provisions of and to the extent allowable by the provisions of the Revenue Act of October 3, 1917.

"(5) The undivided interests of J. Russel Marble, Arthur E. Nye and Rufus S. Woodward in the group of contracts in evidence in this case, amounting to 68⅓ percent thereof, having been acquired by the partnership from said three partners as individuals at the inception of the partnership on January 1, 1917, were, as a matter of law, acquired by the partnership in exchange for shares or interests in said partnership; it appearing that no other consideration was paid therefor."

"(7) The group of contracts in evidence in this case, being part of the assets acquired by the partnership at its inception on January 1, 1917, must, as a matter of law, be regarded as constituting

a part of the invested capital of the partnership in the amount of their fair value on January 1, 1917, subject, however, to the limitation prescribed by the provisions of the Revenue Act of October 3, 1917, relating to the extent to which intangible assets can be considered in determining the amount of the invested capital of a partnership."

"(12) As a matter of law, no evidence being admitted to the contrary, the value of the contracts on January 1, 1917, and on the date of their acquisition by the new partnership should, on the evidence submitted by the petitioner and on the admission of the respondent, be determined as $157,900."

■ The readjustment of the invested capital on this basis will require a recomputation of the excess profits tax for 1917 and the income tax of the several partners for each of the years in question. There is no question but that these contracts became depreciated in value each year during the years 1917, 1918, and 1919. It is agreed that they were depreciated to the extent of 56½ per cent. during 1917 by being fulfilled during that year; 25 per cent. during 1918; and 12¾ per cent. during 1919; and 5¾ per cent. during 1920.

Depreciation is to be allowed at these rates in computing the excess profits taxes and income taxes of the respective appellants for the years in question.

■ As to the right of the taxpayers to a credit on the income tax during 1917 for their respective shares of the excess profits tax paid by the partnership, which was disallowed by both Judge Lowell and Judge Brewster, we think their rulings must be upheld. Such a claim was not made in any of the claims for refund nor in the petitions of the taxpayers or in their assignments of error. There was no waiver of this requirement in this case. Tucker v. Alexander, 275 U.S. 228, 230, 231, 48 S.Ct. 45. 72 L.Ed. 253; United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Red Wing Malting Co. v. Willcuts (C.C.A.) 15 F.(2d) 626, 634, 49 A.L.R. 459; Bryant Paper Co. v. Holden (C.C.A.) 63 F.(2d) 370, 372; Arizona Commercial Mining Co. v. Casey (D.C.) 32 F.(2d) 288, 291; United States ex rel. Endicott et al. v. Mellon, Secretary of the Treasury et al., 59 App.D.C. 255, 39 F.(2d) 505, certiorari denied 282 U.S. 849, 51 S.Ct. 28, 75 L.Ed. 753; Bemis Bros. Bag Co. v. United States (C.C.A.) 60 F. (2d) 944, 948.

While it should have been allowed if a claim for refund had been made, section 3226, R.S., as amended, section 1318 of Revenue Act of 1921 (42 Stat. 314), and Art. 1036, Regulation No. 62, all require that prior to 1929 the facts on which a claim of refund was made be stated in the claim. The facts on which the claim of a credit for their respective shares of the excess profits tax nowhere appear in any of the claims for refund; and the allegations in their respective petitions were confined solely to the issue of the inclusion of the value of the contracts in invested capital and their right to a depreciation of the same in the proportion they were fulfilled each year until completed.

They do not claim, however, as urged by the government in its brief, a refund for the excess profits tax of $41,723.35, which was never assessed.

The petitioners on March 26, 1918, filed a return for the partnership showing an excess profits tax for 1917 of $22,166.46, based on an invested capital of $427,343.44, which was paid. In 1924 the Commissioner advised the petitioners of the partnership's liability for an additional excess profits tax for 1912 of $22,578.45, which was based on an invested capital of $467,696.53, which tax was also paid.

In 1926 the petitioners filed a claim for a refund of the entire amount of excess profits tax which it claimed was illegally assessed and collected, on which the Commissioner rendered no decision and this action was brought.

Later computations by the Commissioner resulted in a corrected statement of excess profits for the year 1917 in the amount of $86,468.26, based on an invested capital of $120,000, or a deficiency of $41,723.35, which was barred from assessment and collection by the statute of limitations. The record does not clearly show whether this sum was actually distributed to the partners as their share of the partnership profits for the year 1917, after deducting the excess profits tax actually assessed by the government. If it was never assessed and collected as an excess profits tax, it would be distributable to the partners as income of the partnership on which they were individually liable for a tax for their respective shares.

■ The excess profits taxes and income taxes for the partners for the years in question must be recomputed on a basis consistent with this opinion. If, however, it is

found upon the facts contained in the record, or upon a further hearing before the District Court, that the tax which the government might properly have assessed and collected, but which was barred, exceeds any assessment of income taxes properly made in accordance with these findings and rulings, the judgment of the District Court will not be changed, Lewis et al., Trustees, v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293, but, if an overassessment appears, judgment may be entered for such overassessment in favor of the partnership or the respective partners entitled thereto.

The judgments of the District Court are reversed, and the case is remanded to that court for a further hearing, if requested by either of the parties, and, in any event, for a recomputation of the excess profits tax and the income tax for the respective partners for the years in question not inconsistent with this opinion.